BRUNO v. CONCEPT FABRICS, INC.

[140 N.C. App. 81 (2000)]

---

TERESA BRUNO, Plaintiff-Appellant v. CONCEPT FABRICS, INC., and R. A. GLEISSNER, Defendants-Appellees

No. COA99-1032

(Filed 19 September 2000)

## 1. Workers' Compensation— industrial accident—supervisor's actions not willful—contributory negligence by plaintiff

The trial court did not err by granting defendant Gleissner's motion for summary judgment in a negligence action arising from an industrial accident which resulted in the amputation of plaintiff's arm where plaintiff was given prescription medication and advised not to operate heavy machinery; she went to work and reported to defendant Gleissner, her supervisor and the plant manager, that she had taken prescription medication; defendant Gleissner testified in his deposition that plaintiff was offered the chance to return home and not work; and plaintiff began operat-

ing the picker machine. The threshold question for determining whether an employee may maintain a common law action against a co-employee for injuries arising out of and in the course of the employment is whether the co-employee's conduct was willful, wanton and reckless; here, defendant Gleissner's actions do not support an inference that he intended that plaintiff be injured or was manifestly indifferent to the consequences of her operating the picker machine. Even assuming willful negligence, plaintiff's conduct in reporting to work after taking prescription medication in violation of company policy and multiple warnings and the manner of her operation of the machinery constitute contributory negligence as a matter of law.

**2. Workers' Compensation— industrial accident—civil action against employer—substantial certainty of injury—insufficient evidence**

The trial court did not err by granting summary judgment for defendant Concept Fabrics in an action arising from an industrial accident which resulted in the amputation of plaintiff's arm. An employee is allowed to pursue a civil action against her employer rather than a Workers' Compensation action where the employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death; here, substantial certainty of injury was not established, even considering in the most favorable light evidence that plaintiff was allowed to operate a machine which required jams to be cleared by hand while taking prescription medication, because the machine had been operating for eleven years without incident, had passed OSHA inspections prior to plaintiff's accident, and there was no evidence that defendant failed or refused to take necessary steps to reduce the likelihood of injury or failed to adhere to relevant industry standards.

Appeal by plaintiff from judgment entered 25 February 1999 by Judge Melzer A. Morgan, Jr., in Randolph County Superior Court. Heard in the Court of Appeals 14 August 2000.

On 17 October 1995, Teresa Bruno (plaintiff) was injured while operating a picker machine in the course and scope of her employment with the defendant Concept Fabrics, Inc. and under the supervision of the defendant R.A. Gleissner. As a result of her injuries, plaintiff's arm had to be amputated. Plaintiff brought this action seeking compensatory and punitive damages from both Concept Fabrics,

Inc. and Gleissner. The trial court entered summary judgment for both Concept Fabrics, Inc. and Gleissner, and plaintiff appealed.

*Donaldson & Black, P.A., by Jeffrey K. Peraldo, for plaintiff appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by David H. Batten, for defendant appellees.*

HORTON, Judge.

Plaintiff contends that there are disputed factual issues in this case which prevent the entry of summary judgment. As to defendant Gleissner, plaintiff alleges a claim pursuant to the decision of our Supreme Court in *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985). Further, plaintiff alleges that defendant Concept Fabrics, Inc. is liable for damages pursuant to the holding of the Supreme Court in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). We will discuss separately the propriety of summary judgment as to each defendant.

## I. Defendant R.A. Gleissner

[1] Concept Fabrics, Inc. (Concept), operates a textile mill in Randolph County, North Carolina. Plaintiff began work at the plant in June 1994. On 16 June 1994, plaintiff signed her employer's Substance Abuse Policy, which included the following paragraph:

It is also against the company's policy to report to work under the the [sic] influence of intoxicants such as alcohol or illegal or unprescribed drugs, as well as prescribed drugs which induce an unsafe mental or physical state. Employees who violate this policy will be subject to disciplinary action, up to and including termination.

On 17 October 1995, plaintiff was operating a "picker" machine, which breaks up fibers in order to spin and weave them into fabric. The machine uses a moving drum and rollers to break up the clumps of fibers. The processed material, known as "sliver," goes first to the carding department and then to the spinners. During processing, the material sometimes "laps," or gets caught up on the drum or rollers and must be cut off with a utility knife. The proper method of removing "the lap" is to disengage the machine and either remove the lap by hand or through the use of the operator's utility knife.

Plaintiff's shift began at 3 o'clock p.m. on 17 October 1995. Earlier that day, plaintiff visited her physician. Plaintiff had been experiencing marital problems, and the physician prescribed Amitriptyline, an antidepressant, and Ativan, "nerve pills," for her. Plaintiff took Ativan prior to arriving at her work site. Plaintiff's physician advised her not to operate heavy machinery while taking the Ativan, as did the pharmacist who filled the prescription. A leaflet which accompanied the prescription also warned the user against operating heavy machinery during its use. Plaintiff testified in her deposition that she read and understood the leaflet prior to arriving at work. When she arrived at the Concept plant, plaintiff informed her supervisor, defendant Gleissner, that she had gone to the doctor and that the doctor had given her medication. As plant manager, defendant Gleissner was responsible for employee safety at the Concept factory. Plaintiff testified that she then "asked [Gleissner] if I could back-wind or sweep or anything like that. And he said that there wasn't any of that to do and that he needed the picker to run. And he sent me to work." Mr. Gleissner testified in his deposition that when plaintiff reported to work on the date of the accident she told him about her husband "having just checked himself into rehab, and how she was . . . excited, upset about it . . . ." He recalled that plaintiff told him she had taken medicine to calm her nerves, but did not appear to be drugged. He also testified that she stated that she could work. He further testified:

> And I said, well, you know, if you want, you can go home; or if you get feeling upset or feeling bad, you can go sit down. Which that was common practice for me to offer that to anyone. But she said, I want to work, I need to work.

*Id.* Finally, Mr. Gleissner testified that he did not ask plaintiff what the side effects of her medication were, nor did she volunteer the information. Later that shift, plaintiff was injured as described above.

Plaintiff also offered the deposition testimony of defendant Gleissner's wife, Mary Louise Gleissner. Mrs. Gleissner testified that in their conversations after the accident, Mr. Gleissner stated that:

> Teresa did not want to run the picker that day, but that wasn't unusual, because nobody liked to run the picker. And he told her that if she—if she didn't want to run the picker, then he would have to let her go home. And that she said, no, she couldn't go home. She had to work.

BRUNO v. CONCEPT FABRICS, INC.

[140 N.C. App. 81 (2000)]

And I remember him saying that she had said, can't I sweep? And he said, no, you can't sweep. I can't pay you to sweep. That if you don't want to run the picker—if you can't run the picker, then you have to go home. And the decision was left, and she said, no, I have to work. I have to stay.

Normally, the Workers' Compensation Act provides an exclusive remedy for an employee injured as a result of an on-the-job accident. *Wiggins v. Pelikan, Inc.*, 132 N.C. App. 752, 755, 513 S.E.2d 829, 832 (1999). *See* N.C. Gen. Stat. §§ 97-9 and 97-10.1 (1999). Our Supreme Court held in *Pleasant*, however, that the Workers' Compensation Act does not shield a co-employee from liability for injury to another employee caused by willful, wanton and reckless negligence. *Pleasant*, 312 N.C. at 717, 325 S.E.2d at 249.

In *Pleasant*, plaintiff and defendant were co-employees. On 13 May 1980, plaintiff was seriously injured while walking across the work site parking lot when he was struck by a truck driven by defendant. Plaintiff sued defendant in a civil action alleging defendant's actions were willful, reckless and wanton in that he deliberately drove his truck towards plaintiff in an attempt to see how closely he could operate the vehicle to the plaintiff. Defendant testified at trial that he only intended to frighten the plaintiff with his actions.

Subsequently, the trial court granted defendant's motion for a directed verdict. Plaintiff appealed, and a divided panel of this Court affirmed. On appeal, the Supreme Court held that "the North Carolina Workers' Compensation Act does not insulate a co-employee from the effects of his willful, wanton and reckless negligence." *Id.* at 717, 325 S.E.2d at 250. Based on this holding, the *Pleasant* Court reversed the Court of Appeals' decision affirming a directed-verdict in favor of the defendant, concluding that the plaintiff had alleged willful, wanton and reckless negligence by the defendant.

The threshold question in determining whether an employee may maintain a common law action against a co-employee for injuries arising out of and in the course of the employee's employment is, therefore, whether the co-employee's injurious conduct was willful, wanton and reckless. Thus, in the present case we must first determine whether the summary judgment evidence viewed in the light most favorable to plaintiff shows that Gleissner's alleged actions constituted willful, wanton and reckless negligence. "Wanton and reckless" conduct is defined as conduct "manifesting a reckless disregard for the rights and safety of others." *Pleasant*, 312 N.C. at 714, 325

S.E.2d at 248. "Willful negligence" is "the intentional failure to carry out some duty imposed by law or contract which is necessary to the safety of the person or property to which it is owed." *Id.*

In *Echols v. Zarn, Inc.*, 116 N.C. App. 364, 448 S.E.2d 289 (1994), this Court applied the willful, wanton and reckless standard to determine whether an employee could maintain a civil suit against a co-employee for injuries arising out of and in the scope of employment. In *Echols*, plaintiff Cynthia Echols suffered serious injury when her hand was caught in a molding machine that she was operating as an employee of Zarn, Inc. The injury occurred when plaintiff reached under the safety gate of the molding machine to remove a plastic part, and the molding machine closed on and crushed plaintiff's right hand. Plaintiff brought a civil action against Zarn, Inc. (Zarn) and a co-employee, Edith Barnett. As to the action against Barnett, plaintiff alleged that Barnett was willfully, wantonly and recklessly negligent in that she directed plaintiff to remove the plastic parts from the molding machine by reaching under the safety gate in violation of Zarn's safety rules. The trial court granted defendant's motion for summary judgment, and plaintiff appealed.

In affirming summary judgment for the defendant, this Court found that the alleged negligent behavior by defendant Barnett did not "rise to the level of conduct necessary to create personal liability over and above the Workers' Compensation Act." *Echols*, 116 N.C. App. at 377, 448 S.E.2d at 296. The evidence most favorable to the plaintiff tended to show that Barnett was a supervisory employee over plaintiff who was familiar with the molding machine and knew of the tremendous force exerted by the machine. Further, Barnett knew plaintiff was unfamiliar with the molding machine, and that plaintiff was also unfamiliar with the manual removal of the products from the machine. Moreover, although Barnett was in charge of enforcing Zarn's safety rules, Barnett explicitly violated such rules when she directed plaintiff to reach beneath the safety gates to remove parts from the molding machine. In reviewing this evidence the Court stated that "[e]ven if we assume that Barnett knew that reaching under the safety gate could be dangerous, we do not believe this supports an inference that Barnett intended that plaintiff be injured or that she was manifestly indifferent to the consequences of plaintiff reaching under the safety gate." *Echols*, 116 N.C. App. at 376, 448 S.E.2d at 296. Accordingly, this Court concluded that the trial court did not err in granting Barnett's motion for summary judgment.

In *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993), our Supreme Court applied the willful, wanton and reckless standard to a common law action brought by an employee against a co-employee for injuries arising out of the plaintiff's employment. There, plaintiff Donald Pendergrass was injured on the job when his arm was caught in a final inspection machine that he was operating. In the subsequent common law action against his employer and two co-employees, plaintiff alleged that the co-employees were wantonly negligent in that they directed him to operate the final inspection machine "when they knew that certain dangerous parts of the machine were unguarded, in violation of OSHA regulations and industry standards." *Pendergrass*, 333 N.C. at 238, 424 S.E.2d at 394. Our Supreme Court subsequently upheld a motion to dismiss by the co-employees, stating that:

> The negligence alleged as to [the co-employees did] not rise to the level of the negligence in *Pleasant*. Although they may have known certain dangerous parts of the machine were unguarded when they instructed Mr. Pendergrass to work at the machine, we do not believe this supports an inference that they intended that Mr. Pendergrass be injured or that they were manifestly indifferent to the consequences of his doing so.

*Id.*

With these standards in mind, we now address plaintiff's claim against her co-employee, Richard Gleissner. The evidence viewed in the light most favorable to the plaintiff in support of plaintiff's contention that Gleissner's conduct was willful, wanton and reckless is as follows: Gleissner was a supervisory employee over plaintiff who was familiar with the picker, a potentially dangerous machine. Further, Gleissner knew that plaintiff had taken prescription medication before reporting to work in violation of Concept's Substance Abuse policy. Finally, although Gleissner was in charge of employee safety, he allowed plaintiff to operate the picker instead of sending her home.

In light of the holdings in *Echols* and *Pendergrass*, we do not believe Gleissner's actions support an inference that he intended that plaintiff be injured or was manifestly indifferent to the consequences of her operating the picker machine. Even assuming that Gleissner was willfully negligent in allowing plaintiff to work on a dangerous machine when he knew that she had taken prescription medication, plaintiff's own conduct in reporting to work after taking prescription

medication in violation of Concept's Substance Abuse policy and after multiple warnings against operating heavy machinery, as well as her failure to disengage the picker machine before attempting to remove "lap" material from the drums and rollers, constitutes contributory negligence such as to bar plaintiff's claim. *See Coleman v. Hines*, 133 N.C. App. 147, 515 S.E.2d 57 (1999); *Coble v. Knight*, 130 N.C. App. 652, 503 S.E.2d 703, 706 (1998); and *Sorrells v. M.Y.B. Hospitality Ventures of Asheville*, 332 N.C. 645, 648, 423 S.E.2d 72, 74 (1992).

In *Sorrells*, our Supreme Court reinstated the trial court's dismissal of a Rule 12(b)(6) claim in an action against a dram shop and stated that while they recognized

the validity of the rule [that the defendant's willful or wanton negligence would avoid the bar of ordinary contributory negligence], we do not find it applicable in this case. Instead, we hold that plaintiff's claim is barred as a result of decedent's own actions, as alleged in the complaint, which rise to the same level of negligence as that of defendant.

. . . In fact, to the extent the allegations in the complaint establish more than ordinary negligence on the part of defendant, they also establish a similarly high degree of contributory negligence on the part of the decedent. Thus, we conclude that plaintiff cannot prevail.

*Sorrells*, 332 N.C. at 648-49, 423 S.E.2d at 74.

Likewise, in the present case (heard in the context of a motion for summary judgment), assuming that the evidence establishes willful and wanton negligence on the part of defendant, it also establishes a "similarly high degree of contributory negligence on the part of" plaintiff. The uncontradicted evidence shows that plaintiff was admittedly aware that she should not have operated machinery on the day in question, that she was not obligated to operate the picker machine but could have returned home, and that she chose to remain at the plant and operate the picker because she needed to work. If defendant Gleissner is negligent because he allowed plaintiff to operate the picker after being informed that she had ingested some type of prescription medication, then plaintiff is equally negligent in operating the machine after being specifically warned against doing so by three separate sources. Thus, plaintiff's claim is barred because of her contributory negligence as a matter of law. Accordingly, we con-

clude that the trial court did not err in granting Gleissner's motion for summary judgment.

## II. Defendant Concept Fabrics, Inc.

[2] Next, we will address whether plaintiff may maintain this action against her employer, Concept Fabrics, Inc. In addition to the prohibition of civil actions against negligent co-employees, the Workers' Compensation Act also bars an employee subject to the Act from maintaining a common law negligence action against her employer. *Pleasant*, 312 N.C. at 713, 325 S.E.2d at 247. In *Woodson*, however, our Supreme Court recognized that an employee may pursue a civil action against her employer when the employer "intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct . . . ." *Woodson*, 329 N.C. at 340-41, 407 S.E.2d at 228.

Thus, the question we must answer in addressing whether plaintiff may maintain this action against her employer, Concept Fabrics, Inc., is whether the evidence, viewed in the light most favorable to the plaintiff, would tend to show that Concept intentionally engaged in misconduct knowing it was substantially certain to cause serious injury or death to employees, and plaintiff was injured by that misconduct. Substantial certainty is more than a possibility or substantial probability but is less than actual certainty. *Pastva v. Naegele Outdoor Advertising*, 121 N.C. App. 656, 658-59, 468 S.E.2d 491, 493, *disc. review denied*, 343 N.C. 308, 471 S.E.2d 74 (1996). Factors for substantial certainty which the Court has found instructive in the past include, but are not limited to, the following: (i) the risk existed without injury for some period of time; (ii) the instrumentality of the injury was defective in some manner; (iii) the employer attempted to remedy the risk; (iv) violations of state or federal work safety regulations; (v) failure to adhere to industry practice; and (vi) safety training in the context of the risk causing the harm. *Wiggins*, 132 N.C. App. at 756-58, 513 S.E.2d at 832-33.

One of the more recent cases to address Woodson's "substantial certainty" test is *Wiggins*. There, plaintiff suffered back injuries in the course and scope of her employment when a cart that she was maneuvering tipped, causing her to fall, whereafter the cart fell on plaintiff's back. Plaintiff subsequently brought a *Woodson* action against her employer, Pelikan, Inc., alleging that defendant knew or should have known that the cart was unstable and substantially

certain to cause serious injury or death to an employee. The trial court directed a verdict in favor of defendant, and plaintiff appealed to this Court.

The evidence most favorable to the plaintiff tended to show that the cart was unstable and had been taken to the plant maintenance shop for repairs, but that it had not been repaired due to production requirements. There was also testimony that tended to show that defendant Pelikan was aware of several similar tipping incidents in the past. Although there was no evidence that the cart violated any government safety regulations or industry standards, plaintiff's expert mechanical engineer testified that the design of the cart was inherently unsafe and required a knee brace or stop guard to prevent the cart from falling on the person using it. After plaintiff's injury, a knee brace was welded onto the cart.

After analyzing plaintiff's claim under the *Wiggins* factors, this Court found that plaintiff had failed to show that defendant's conduct with respect to the cart was such that defendant knew it was substantially certain to result in death or serious injury to plaintiff or other employees. The cart had been used for many years without injury and violated no safety regulations or industry standards. Moreover, there was no evidence that defendant refused to implement measures reducing the likelihood of plaintiff's injuries. Thus, plaintiff failed to show the appropriate standard of negligence necessary for her *Woodson* claim, and directed verdict in favor of defendant was affirmed.

In the instant case, evidence considered in the light most favorable to the plaintiff shows that Concept's supervisor allowed plaintiff to operate the picker despite knowledge that she had taken prescription medication and in violation of Concept's Substance Abuse policy. Further, evidence tends to show that the picker machine in question had a history of jamming, requiring the operator to clear the machine by hand, and that employees often left the machine on while clearing certain types of jams.

These allegations do not, however, establish substantial certainty of injury on the part of the defendant. The machine in question had been operating for eleven years without incident and had passed previous OSHA inspections prior to plaintiff's accident. There was no evidence that Concept Fabrics, Inc. had failed or refused to take necessary steps to reduce the likelihood of injury to any employee operating the picker machine, nor any evidence that defendant

failed to adhere to relevant industry standards. We hold that the trial court did not err in granting summary judgment for defendant Concept Fabrics, Inc.

Affirmed.

Chief Judge EAGLES and Judge MARTIN concur.