PATRICIA WIGGINS, Plaintiff v. PELIKAN, INC., Defendant

No. COA98-790

(Filed 6 April 1999)

**Workers' Compensation— exclusivity of remedy—substantial certainty of death or serious injury**

The trial court properly directed a verdict in defendant's favor in a personal injury action arising from an industrial cart turning over onto plaintiff where plaintiff failed to offer evidence demonstrating that defendant knew its conduct was substantially certain to result in serious injury or death so as to support a verdict in her favor under the *Woodson* exception to the exclusivity provision of the Workers' Compensation Act. When deciding whether a defendant-employer acted with substantial certainty of the consequences of its conduct courts have considered several factors: (1) whether the risk that caused the harm existed for a long period of time without causing injury; (2) whether the risk was created by a defective instrumentality with a high probability of causing the harm at issue; (3) whether there was evidence the employer attempted to remedy the risk that caused the harm

prior to the accident; (4) whether the employer's conduct which created the risk violated state of federal work safety regulations; (5) whether the defendant-employer created a risk by failing to adhere to an industry practice; and (6) whether the defendant-employer offered training in the safe behavior appropriate in the context of the risk causing the harm.

Appeal by plaintiff from judgment entered 2 January 1998 by Judge J. Richard Parker in Gates County Superior Court. Heard in the Court of Appeals 24 February 1999.

*Alexy, Merrell, Wills & Wills, L.L.P., by Gregory E. Wills, for plaintiff-appellant.*

*King & Ballow, by Steven C. Douse, for defendant-appellee.*

*The Twiford Law Firm, by John S. Morrison, for defendant-appellee.*

MARTIN, Judge.

Plaintiff appeals from a judgment directing a verdict in favor of defendant and dismissing plaintiff's action for damages for personal injury. In her complaint, plaintiff alleged that while employed by defendant, she sustained an on-the-job injury as a result of defendant's intentional conduct which it knew or should have known was substantially certain to cause serious injury or death to an employee. Defendant Pelikan, Inc. (Pelikan) denied the material allegations of the complaint and asserted as an affirmative defense, the exclusivity provisions of Chapter 97 of the North Carolina General Statutes, The Workers' Compensation Act.

Plaintiff's evidence at trial tended to show that defendant operates a film processing plant in Chowan County. Plaintiff was employed at the plant as a "slitter;" she operated a machine used to cut large rolls of film into strips to produce computer ribbons. Her job required that she load large rolls of film onto one end of the machine, which automatically cut the film into smaller strips and spooled it onto a rod at the other end. The large rolls of film were located on a rack on the opposite side of the plant floor from the slitting machines; to obtain a new roll of film, slitter operators used a cart specially designed to lift the film from the rack, transport it across the floor, and lower it onto the slitting machine. On the date of her injury, plaintiff had worked at the plant between two and four years.

On 25 July 1990, while plaintiff was maneuvering the cart to a position where she could obtain a roll of film from the storage rack, the cart tipped back and struck her head. Plaintiff fell on the floor and the cart fell on her back. She was taken to the hospital by ambulance, underwent surgery on her back and sustained a five percent (5%) permanent partial disability to her cervical spine and a ten percent (10%) permanent partial disability to her lower back.

The film cart is mounted on four wheels; two of the wheels are fixed and two are mounted on swivels. At its base, the cart is eighteen and one-half (18½) inches long and twenty-five (25) inches wide; its height is eighty-two and one-half (82½) inches and it weighs 453 pounds.

There was evidence tending to show that the cart was unstable and had been taken to the plant maintenance shop for repairs on several occasions, but that it had not been repaired due to production requirements. Other plant employees testified that the cart had tipped over several times and that the incidents had been reported to supervisors. Until plaintiff's injury, however, no one had ever been injured by the cart. It had been used to retrieve thousands of rolls of film each year for more than twenty-seven years.

There was no evidence the film cart violated government safety regulations or industry standards. However, plaintiff's expert mechanical engineer testified that "the top heavy design with the short wheel base creates a guarantee that the cart will overturn when subjected to normal dynamic forces associated with its movement. . . ," and that a knee brace or stop guard would have prevented the cart from falling on the person using it. After plaintiff's injury, a knee brace was welded onto the cart.

---

Plaintiff assigns error to the trial court's granting defendant's motion for directed verdict; she contends her evidence was sufficient to support a finding by the jury that defendant intentionally engaged in conduct substantially certain to cause injury to the plaintiff, thus meeting the standard set forth in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). We disagree and affirm the judgment of the trial court.

A defendant's motion for directed verdict tests the legal sufficiency of the evidence, taken as true and considered in the light most favorable to the plaintiff, to sustain a jury verdict in the plaintiff's favor. *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 411 S.E.2d 133 (1991);

*West v. King's Dept. Store*, 321 N.C. 698, 365 S.E.2d 621 (1988). In ruling upon the motion, the trial court must give the plaintiff the benefit of every reasonable inference which can be drawn from the evidence, *Samuel v. Simmons*, 50 N.C. App. 406, 273 S.E.2d 761 (1981), such benefit, however, does not extend to "conjecture, surmise, and speculation." *Hinson v. National Starch & Chem. Corp.*, 99 N.C. App. 198, 202, 392 S.E.2d 657, 659 (1990).

The Workers' Compensation Act has traditionally provided the sole remedy for an employee injured on the job as a result of an accident. N.C. Gen. Stat. §§ 97-9 and 97-10.1 (1998), *Rose v. Isenhour Brick & Tile Co., Inc.*, 344 N.C. 153, 472 S.E.2d 774 (1996); *Tinch v. Video Indus. Serv., Inc.*, 129 N.C. App. 69, 497 S.E.2d 295 (1998). In *Woodson v. Rowland*, however, the North Carolina Supreme Court established an exception to the exclusivity provisions of the Act and held:

> [W]hen an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

329 N.C. at 340-41, 407 S.E.2d at 228. To make out a claim under *Woodson*, a plaintiff must establish

> that the employer intentionally engaged in misconduct and that the employer knew that such misconduct was "substantially certain" to cause serious injury or death and, thus, the conduct was "so egregious as to be tantamount to an intentional tort."

*Owens v. W.K. Deal Printing, Inc.*, 339 N.C. 603, 604, 453 S.E.2d 160, 161 (1995) (quoting *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 239, 424 S.E.2d 391, 395 (1993)); *see Kolbinsky v. Paramount Homes, Inc.*, 126 N.C. App. 533, 485 S.E.2d 900, *disc. review denied*, 347 N.C. 267, 493 S.E.2d 457 (1997); *Regan v. Amerimark Bldg. Products, Inc.*, 127 N.C. App. 225, 489 S.E.2d 421 (1997), *affirmed*, 347 N.C. 665, 496 S.E.2d 378 (1998) (*Regan I*); *Pastva v. Naegele Outdoor Advertising, Inc.*, 121 N.C. App. 656, 468 S.E.2d 491, *disc. review denied*, 343 N.C. 308, 471 S.E.2d 74 (1996). "Substantial certainty is more than a possibility or substantial probability of serious injury but is less than

actual certainty." *Regan* at 227, 489 S.E.2d at 423. The Court must consider whether circumstances existed prior to the injury from which the defendant-employer was aware of a high probability of serious injury to employees. *Rose v. Isenhour Brick & Tile Co., Inc., supra; Mickles v. Duke Power Co.,* 342 N.C. 103, 463 S.E.2d 206 (1995).

While the case law has been less than certain as to what constitutes "substantial certainty," the cases offer some guidance as to factors which must be considered when determining whether a defendant-employer acted with knowledge of a "substantial certainty" of injury or death as a consequence of its conduct. "No one factor is determinative in evaluating whether a plaintiff has stated a valid *Woodson* claim; rather, all of the facts taken together must be considered." *Regan v. Amerimark Bldg. Products, Inc.,* 118 N.C. App. 328, 331, 454 S.E.2d 849, 852, *disc. review denied,* 340 N.C. 359, 458 S.E.2d 189 (1995), *cert. denied,* 342 N.C. 659, 467 S.E.2d 723 (1996) *(Regan II).* When deciding whether a defendant-employer acted with "substantial certainty" of the consequences of its conduct, courts have considered several questions, including the following:

(1) Whether the risk that caused the harm existed for a long period of time without causing injury. *See Rose v. Isenhour Brick & Tile Co., Inc., supra; Mickles v. Duke Power Co., supra; Regan I, supra.* If the risk has existed in the workplace for a long period of time without causing substantial injury, it is less likely the employer acted with "substantial certainty" when subjecting employees to that risk.

(2) Whether the risk was created by a defective instrumentality with a high probability of causing the harm at issue. *See Rose v. Isenhour Brick & Tile Co., Inc., supra; Mickles v. Duke Power Co., supra.* However, expert testimony of a design defect should be given less weight than the prior accident history, especially if the allegedly defective instrumentality has a relatively safe prior history of use. *See Rose v. Isenhour Brick & Tile Co., Inc.,* at 159, 472 S.E.2d at 778 ("defendant's accident history fails to bear out plaintiff's expert's probability calculations" because defendant's "employees had been operating brick-setting machine number three with weights and wires for approximately six years prior to Rose's death, and in all this time, no operator of brick-setting machine number three suffered a serious injury or death due to an accident involving the carriage head."); *Mickles v. Duke Power Co.* at 111, 463 S.E.2d at 211-12 ("In view of the uncontroverted evidence that while roll-out occurs, it is rare, and

WIGGINS v. PELIKAN, INC.

[132 N.C. App. 752 (1999)]

that except for three widely scattered instances over a sixteen-year period, defendant's linemen had spent millions of manhours aloft with no roll-out, [the expert's] opinion is inherently incredible.").

(3) Whether there was evidence the employer, prior to the accident, attempted to remedy the risk that caused the harm. *See Kelly v. Parkdale Mills, Inc.*, 121 N.C. App. 758, 468 S.E.2d 458 (1996). A good faith attempt to remedy the problem reduces the likelihood that the employer acted with the requisite intent to cause harm. *See Mickles, supra.* On the other hand, if the employer knew of the existence of feasible safety precautions that would have reduced the risk causing the harm and failed to take such precautions, such failure could tend to show disregard for the safety of workers. *See Arroyo v. Scottie's Professional Window Cleaning, Inc.*, 120 N.C. App. 154, 461 S.E.2d 13 (1995), *review improv. allowed*, 343 N.C. 118, 468 S.E.2d 58 (1996) (supervisor's refusal to allow minimum safety precautions was substantially certain to result in serious injury or death); *Regan II, supra* (danger which existed from design of machine was increased by inoperable corrective emergency switches).

(4) Whether the employer's conduct which created the risk violated state or federal work safety regulations. *See Rose v. Isenhour Brick & Tile Co., Inc., supra* (defendant never cited for OSHA violation, and no safety regulation required defendant to equip machine with safety guards); *Mickles v. Duke Power Co., supra* (defendant never cited for OSHA violation concerning condition which caused death); *Tinch v. Video Indus. Serv., Inc., supra* (OSHA regulations did not apply to the specific instrumentality of harm at issue); *Kelly v. Parkdale Mills, Inc., supra*, (OSHA violations, though not determinative, are a factor in determining whether a *Woodson* claim has been established); *Arroyo v. Scottie's Professional Window Cleaning, Inc., supra*, (defendant did not enforce safety measures required by the Federal and State Occupational Safety and Health Acts (OSHA) or industry safety guidelines).

However, although a violation of state and federal regulations is an important factor in determining whether the employer's conduct can be found to have been substantially certain to cause injury or death, such violation, without more, is insufficient evidence of the employer's state of mind to make out a case of liability under the *Woodson* exception to the exclusivity rule. *See Pendergrass v. Card Care, Inc., supra; Tinch v. Video Indus. Serv., Inc., supra; Kolbinsky v. Paramount Homes, Inc., supra.*

WIGGINS v. PELIKAN, INC.

[132 N.C. App. 752 (1999)]

(5) Whether the defendant-employer created a risk by failing to adhere to an industry practice, even though there was no violation of a state or federal safety regulation. *See Kelly v. Parkdale Mills, Inc.*, *supra.*

(6) Whether the defendant-employer offered training in the safe behavior appropriate in the context of the risk causing the harm. *See Mickles v. Duke Power Co.*, *supra; Kelly v. Parkdale Mills, Inc.*, *supra.*

Obviously, the foregoing inquiries may not be relevant to every case, and the evidence in each case may give rise to other factors which touch upon the question of whether a defendant-employer has intentionally engaged in conduct which it knew was substantially certain to cause serious injury or death to an employee. Applying the relevant factors to the evidence presented by plaintiff in the present case, however, leads us to the conclusion that plaintiff has failed to show that defendant's conduct with respect to the use of the film cart was such that defendant knew that it was substantially certain to result in death or serious injury to plaintiff or other employees. The evidence showed that the cart had been used for many years without causing injury, rendering incredible the testimony of plaintiff's expert that the cart's design was "guaranteed" to cause injury. Moreover, there was no evidence that alleged defects in the cart's design violated state or federal workplace safety regulations or industry safety standards. Likewise, there was no evidence that defendant was aware of, and refused to implement, measures which would have rendered plaintiff's injury less likely. Thus, we hold plaintiff has failed to offer evidence demonstrating that defendant knew its conduct was substantially certain to result in serious injury or death so as to support a verdict in her favor under the *Woodson* exception to the exclusivity provision of the Workers' Compensation Act. The trial court properly directed a verdict in defendant's favor.

Affirmed.

Judges TIMMONS-GOODSON and HUNTER concur.