DONALD EARL WHITAKER AND THOMAS LEE WHITAKER, JR., CO-ADMINISTRATORS OF THE ESTATE OF CARLTON WHITAKER, DECEASED, PLAINTIFFS v. TOWN OF SCOTLAND NECK, C.T. HASTY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SAFETY DIRECTOR FOR THE TOWN OF SCOTLAND NECK, AND DOUGLAS BRADDY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS PUBLIC WORKS SUPERINTENDENT FOR THE TOWN OF SCOTLAND NECK, DEFENDANTS

No. COA02-22

(Filed 17 December 2002)

**Workers' Compensation— *Woodson* claim—town employee— summary judgment improper**

The trial court erred by granting summary judgment for defendant town on a *Woodson* claim for the death of a town employee who was killed when a dumpster partially detached from a garbage truck and struck the employee because of a defective latching device on the truck for the reason that a genuine issue of material fact exists regarding whether defendant's actions were substantially certain to cause death.

Appeal by plaintiffs from order entered 15 August 2001 by Judge Dwight L. Cranford in Halifax County Superior Court. Heard in the Court of Appeals 28 October 2002.

*Joynes & Gaidies Law Group, P.A., by Frank D. Lawrence, III, for plaintiff-appellants.*

*Cranfill, Sumner & Hartzog, L.L.P., by Patrick H. Flanagan and Donna R. Rascoe, for defendant-appellees.*

EAGLES, Chief Judge.

Donald and Thomas Whitaker ("plaintiffs") appeal from summary judgment in favor of the Town of Scotland Neck ("defendant"). Plaintiffs are co-administrators of the estate of Carlton Whitaker ("decedent"). Charles Hasty, the town's Safety Director, and Douglas Braddy, the town's Public Works Superintendent, were also named as defendants. On appeal, plaintiffs assert one assignment of error: that the trial court erred in granting defendant's motion for summary judgment. After careful review of the record, briefs, and arguments by counsel, we agree and reverse and remand for further proceedings.

The evidence tends to show the following. Carlton Whitaker was employed by defendant Town of Scotland Neck before his death. On

30 July 1997, decedent was assigned to a crew operating Scotland Neck's garbage truck Number 84. The other men on the crew were Danny Wood and Fred Shields. The truck's route included the dumpster at Hobgood Academy. Mr. Wood, who was driving Truck Number 84, used the mechanical arms of the truck to pick up the Academy's dumpster. While the dumpster was in the air being emptied into the back of the truck, it came partially detached from the truck's mechanical arms. The dumpster swung loose and pinned decedent against the side of the garbage truck. Decedent died from the resulting crush injury to his chest twenty-eight days later.

Defendant's Safety Director Hasty investigated the accident on the date it occurred. His report confirmed that the dumpster became loose while it was being lifted in the air because of a defective latching device on Truck Number 84. Several town employees also stated that the dumpster at Hobgood Academy previously had fallen to the side of a garbage truck in a similar fashion while being emptied approximately three weeks before the accident on 30 July 1997. According to several employees, the earlier incident had been reported to Public Works Superintendent Braddy, but he did not take action to fix the truck or the dumpster until after decedent's accident. Woods and Shields testified in depositions that they told Braddy the dumpster at Hobgood Academy was unsafe and that Truck Number 84 had a broken locking latch. Shields estimated that the latch had been broken for two to three months. Another town employee, Linwood Clark, stated the latch had been broken for six months. Braddy denied having knowledge of the earlier accident and denied knowledge of any defect in the truck or dumpster involved in decedent's death.

The North Carolina Department of Labor's Division of Occupational Safety and Health ("OSHA") performed an investigation of the accident, which began on 15 August 1997. OSHA found five "serious" violations by the Town of Scotland Neck stemming from the accident on 30 July 1997. These violations included citations for failure to train employees in a safe manner of operating the garbage truck equipment, failure to supervise employees in the operation of the equipment, failure to set up a program ensuring inspection of the equipment, operating unsafe equipment and operating equipment in an unsafe manner. The OSHA report stated that "defective equipment was the proximate cause of the accident" and "the accident . . . was a result of employment conditions that were not in compliance with the safety standards of OSHA." The report found that "with rea-

sonable diligence and routine inspection employer could and should have known" of the broken latch on Truck Number 84. Defendant town was assigned a penalty of $10,500 as a result of the violations found in the OSHA report.

Plaintiffs filed a claim in superior court on behalf of decedent's estate alleging gross negligence and wanton misconduct and seeking compensatory and punitive damages. Defendant responded that plaintiffs' claim was barred by the North Carolina Workers' Compensation Act and that recovery under the Act was plaintiffs' exclusive remedy against defendant. Defendant's first motion to dismiss was denied by an order entered 26 April 2001. Defendant did not respond to plaintiffs' request for admissions that were filed on 25 June 2001. Defendant renewed its motion for summary judgment, which was granted by order on 15 August 2001. From that order, plaintiffs appeal.

On appeal, plaintiffs argue that the trial court erred in granting defendant's motion for summary judgment. Plaintiffs argue that decedent's accident fits within an exception to the North Carolina Workers' Compensation Act. Because a genuine issue of material fact exists regarding whether defendant's actions were "substantially certain" to cause decedent's death, we agree that summary judgment was not proper.

The North Carolina Workers' Compensation Act is the sole remedy in most cases for employees who suffer from employment-related diseases and injuries. G.S. § 97-1 *et seq.* (2001). The Workers' Compensation Act was created to "provide certain limited benefits to an injured employee regardless of negligence on the part of the employer, and simultaneously to deprive the employee of certain rights he had at the common law." *Brown v. Motor Inns*, 47 N.C. App. 115, 118, 266 S.E.2d 848, 849, *disc. review denied* 301 N.C. 86, 273 S.E.2d 300 (1980).

In 1991, the North Carolina Supreme Court created an exception to the general rule that the Workers' Compensation Act was the sole remedy for injured employees. The exception outlined in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), addresses intentional misconduct by employers:

> We hold that when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that

misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act. Because, as also discussed in a subsequent portion of this opinion, the injury or death caused by such misconduct is nonetheless the result of an accident under the Act, workers' compensation claims may also be pursued. There may, however, only be one recovery.

*Woodson v. Rowland*, 329 N.C. 330, 340-41, 407 S.E.2d 222, 228 (1991). According to *Woodson*, if employers committed the equivalent of an intentional tort, employees would be allowed to step outside the bounds of the Workers' Compensation Act and sue employers for their injuries. *Woodson v. Rowland*, 329 N.C. 330, 341, 407 S.E.2d 222, 228-29 (1991).

Since creation of the *Woodson* exception, a number of employees have asked courts to apply the exception to allow their claims outside of the Workers' Compensation Act. Before this case, no claim has been brought successfully under the *Woodson* exception. In an attempt to clarify when the *Woodson* exception should be applied, this Court listed the factors to be used when determining whether an employer engaged in misconduct with substantial certainty of causing his employee harm. *See Wiggins v. Pelikan, Inc.*, 132 N.C. App. 752, 513 S.E.2d 829 (1999). The *Wiggins* case analyzed the cases following *Woodson* and created a list of six factors to use when defining substantial certainty:

(1) Whether the risk that caused the harm existed for a long period of time without causing injury. . . .

(2) Whether the risk was created by a defective instrumentality with a high probability of causing the harm at issue. . . .

(3) Whether there was evidence the employer, prior to the accident, attempted to remedy the risk that caused the harm. . . .

(4) Whether the employer's conduct which created the risk violated state or federal work safety regulations.

. . . .

(5) Whether the defendant-employer created a risk by failing to adhere to an industry practice, even though there was no violation of a state or federal safety regulation.

(6) Whether the defendant-employer offered training in the safe behavior appropriate in the context of the risk causing the harm.

*Wiggins v. Pelikan, Inc.*, 132 N.C. App. 752, 756-58, 513 S.E.2d 829, 832-33 (1999) (citations omitted). Here, plaintiffs presented evidence of the existence of five out of these six factors by using several depositions. Defendant responded by denying plaintiffs' evidence and asking the court to measure plaintiffs' evidence against similar post-*Woodson* claims. The trial court then granted defendant's motion for summary judgment.

A motion for summary judgment should only be granted if "there is no genuine issue as to any material fact" and "any party is entitled to judgment as a matter of law." G.S. § 1A-1, Rule 56 (2001). Summary judgment should be used to "eliminate the necessity of a formal trial where only questions of law are involved and a fatal weakness in the claim . . . is exposed." *Hall v. Post*, 85 N.C. App. 610, 613, 355 S.E.2d 819, 822 (1987), *rev'd on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988) (quoting *Foster v. Winston-Salem Joint Venture*, 303 N.C. 636, 642, 281 S.E.2d 36, 40 (1981)). "Summary judgment is a drastic remedy and should be exercised with caution." *Southern Watch Supply v. Regal Chrysler-Plymouth*, 69 N.C. App. 164, 165, 316 S.E.2d 318, 319, *disc. review denied*, 312 N.C. 496, 322 S.E.2d 560 (1984), *appeal after remand*, 82 N.C. App. 21, 345 S.E.2d 453 (1986). In a case where "there is any question that can be resolved only by the weight of the evidence, summary judgment should be denied." *In re Will of McCauley*, 356 N.C. 91, 101, 565 S.E.2d 88, 95 (2002) (citing *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E.2d 419, 422 (1979)).

Summary judgment was improper here because this case involves a question that can be resolved only by weighing the evidence presented. Plaintiffs presented some evidence regarding defendant employer's acting with "substantial certainty" of causing plaintiff's decedent serious bodily injury, by offering proof of the existence of most of the *Wiggins* factors. Plaintiffs' affidavits and pleadings tended to show that the risk that caused decedent's death had existed for a relatively short but significant amount of time. Conflicting deposition testimony places the defect in existence at least three weeks before decedent's accident and possibly as long as six months before the accident. Plaintiffs' evidence showed that the defective instrumentality, in this case equipment on Truck Number 84, created a risk with a high probability of injuring a town employee in the same man-

WHITAKER v. TOWN OF SCOTLAND NECK

[154 N.C. App. 660 (2002)]

ner that decedent was injured. The third factor of the *Wiggins* test was satisfied by plaintiffs' claim that the Town's Public Works Superintendent Braddy knew of the defect and did not attempt to repair the defective Truck Number 84 in order to prevent injury. Also, plaintiffs' evidence demonstrated that the employer's conduct created the risk. The conduct creating the risk violated state and federal workplace safety regulations and failed to adhere to industry safety standards. Plaintiffs cite five serious violations by defendant according to the OSHA report in addition to violations of standards contained within the Accident Prevention Manual, which is produced by the National Safety Council.

Evidence presented by defendant contradicted most of plaintiffs' proffered evidence. Defendant argued that there had been no similar accidents before the one that killed decedent, that Braddy had no knowledge of the defective truck and did not refuse to fix it, and that the OSHA citations were correctly denominated as "serious" violations instead of "willful" violations.

The parties here have essentially disagreed on several issues of material fact, most importantly, whether defendant employer, through its Public Works Superintendent Braddy, knew of the defective condition of Truck Number 84 before decedent was killed on the job. Even were we to find that all the factual matters were resolved, in a case where a balancing of factors is necessary, summary judgment is inappropriate. The question of whether defendant acted with substantial certainty that its actions would cause decedent's death must be resolved by weighing the facts presented to the court. Accordingly, we conclude that the trial court erred by granting defendant Town's motion for summary judgment. Because we find error and reverse the trial court's decision, we do not determine whether defendants Hasty and Braddy may be sued in their individual capacities. Hasty and Braddy's liability as individuals depends upon a factual finding by the trial court that they are public employees who are not entitled to governmental immunity for their actions. We reverse and remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.

Judges TYSON and THOMAS concur.