DONALD EARL WHITAKER AND THOMAS LEE WHITAKER, JR., CO-ADMINISTRATORS OF THE ESTATE OF CARLTON WHITAKER, DECEASED v. TOWN OF SCOTLAND NECK, C.T. HASTY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SAFETY DIRECTOR FOR THE TOWN OF SCOTLAND NECK, AND DOUGLAS BRADDY, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS PUBLIC WORKS SUPERINTENDENT FOR THE TOWN OF SCOTLAND NECK

No. 49PA03

(Filed 7 November 2003)

## Employer and Employee; Workers' Compensation— *Woodson* exception—intentional misconduct

The trial court did not err in a negligence case arising out of an employee maintenance worker's death while collecting garbage by granting summary judgment in favor of defendants based on the fact that plaintiffs failed to raise a genuine issue of material fact as to defendants' civil liability under the *Woodson* exception to the general exclusivity provisions of the North Carolina Workers' Compensation Act, because: (1) the six-factor test created by the Court of Appeals in *Wiggins*, 132 N.C. App. 752 (1999), misapprehends the narrowness of the substantial certainty standard set forth in *Woodson*, 329 N.C. 330 (1991), and is therefore explicitly rejected; (2) the *Woodson* exception applies only in the most egregious cases of employer misconduct where there is uncontroverted evidence of the employer's intentional misconduct and where such misconduct is substantially certain to lead to the employee's serious injury or death; (3) there was insufficient evidence in the present case to reasonably support plaintiffs' contention that defendants intentionally engaged in misconduct knowing that it was substantially certain to cause serious injury or death to decedent; (4) simply having knowledge of some possibility, or even probability, of injury or death is not the same as knowledge of a substantial certainty of injury or death; and (5) the facts of this case involve defective equipment and human error that amount to an accident rather than intentional misconduct.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 154 N.C. App. 660, 572 S.E.2d 812 (2002), reversing and remanding an order for summary judgment entered by Judge Dwight L. Cranford on 15 August 2001, in Superior Court, Halifax County. Heard in the Supreme Court 9 September 2003.

## WHITAKER v. TOWN OF SCOTLAND NECK

[357 N.C. 552 (2003)]

*Joynes & Gaidies Law Group, P.A., by Frank D. Lawrence, III, for plaintiff-appellees.*

*Cranfill, Sumner & Hartzog, L.L.P., by Patrick H. Flanagan, Donna R. Rascoe, Edward C. LeCarpentier, III, and David H. Batten for defendant-appellants.*

WAINWRIGHT, Justice.

The issue raised in the present appeal is whether plaintiffs presented sufficient evidence to trigger the narrowly defined *Woodson* exception to the general exclusivity provisions of the North Carolina Workers' Compensation Act (Act). *See Woodson v. Rowland,* 329 N.C. 330, 407 S.E.2d 222 (1991); *see also* N.C.G.S. § 97-10.1 (2001) (excluding all rights and remedies against employers other than those specifically set forth in the Workers' Compensation Act). For the reasons set forth below, we hold that plaintiffs did not meet this burden and that the trial court properly granted summary judgment in favor of defendants.

The evidence presented to the trial court shows the following: The Town of Scotland Neck (Town) is a North Carolina municipality that provides general governmental services including, among other things, garbage collection. Decedent Carlton Whitaker was employed by the Town as a general maintenance worker assigned to assist in the operation of a garbage truck.

On 30 July 1997, decedent and two other maintenance workers were emptying a dumpster at a private school. The garbage truck backed up to the dumpster, with decedent positioned at the rear of the truck. Decedent's job was to attach the dumpster to the truck's lifting equipment so that the dumpster could be emptied. In order to secure the dumpster for lifting, decedent and his co-worker attached a trunnion bar on the front of the dumpster to latching mechanisms located at the rear of the truck. Decedent hooked the truck's cable winch to the rear of the dumpster. Coupled to the truck in this fashion, the winch hoisted the dumpster into the air, pivoting the dumpster on its trunnion bar, and allowing its contents to fall into the truck's rear compactor.

As the dumpster was being hoisted, the latching mechanism on decedent's side of the garbage truck gave way, releasing the trunnion bar and allowing the raised container to swing free of its restraints. The dumpster swung around to decedent's side of the truck, striking

decedent and pinning him against the truck. Decedent's co-workers rushed to his aid, manually pushing the dumpster aside and lowering decedent to the ground. Following the accident, decedent was conscious and could talk.

Rescue personnel responded and transported decedent to the hospital. Twenty-eight days after the accident, decedent died as a consequence of a crush injury to his chest.

On the day of the accident, Scotland Neck Safety Director C.T. Hasty began his investigation. He found that the dumpster latching mechanism on the truck could not, in fact, be latched by hand and that the dumpster was bent. He interviewed a number of decedent's co-workers, several of whom reported that both the dumpster and the truck's latching mechanism had been broken for at least two months and that such defects had been reported to their supervisor. The supervisor, however, denied any prior knowledge of defects in the truck or dumpster. Based upon his investigation, Hasty concluded that the broken latch and the bent dumpster were the direct cause of the accident.

In August 1997, the North Carolina Department of Labor's Division of Occupational Safety and Health (OSHANC) also investigated the accident and similarly concluded that "defective equipment was the proximate cause of the accident" and that "the accident . . . was a result of employment conditions that were not in compliance with the safety standards of OSHA." More specifically, the OSHANC investigator found five "serious" violations of state labor law. These violations included: failure to train employees in the safe operation of garbage truck equipment, failure to properly supervise employees in the operation of garbage truck equipment, failure to implement a program for inspection of garbage truck equipment, operation of defective garbage truck equipment, and unsafe operation of garbage truck equipment. As a result of these OSHANC violations, the Town was assessed penalties totaling $10,500.

On 20 August 1999, plaintiffs Donald Whitaker and Thomas Whitaker, Jr., as co-administrators of the estate of decedent, filed a civil action against the Town; Scotland Neck Safety Director C.T. Hasty, in his individual and official capacity; and Scotland Neck Public Works Superintendent Douglas Braddy, in his individual and official capacity. Plaintiffs alleged "willful, wanton, reckless, careless and gross negligence" and demanded compensatory and punitive damages.

WHITAKER v. TOWN OF SCOTLAND NECK

[357 N.C. 552 (2003)]

Defendants denied all negligence. As an additional defense, defendants responded that plaintiffs' civil action was barred by the North Carolina Workers' Compensation Act, which limits remedies for work-related injuries to those expressly provided by the Act.

The trial court agreed that plaintiffs' claim was barred by the Workers' Compensation Act and granted defendants' motion for summary judgment on 15 August 2001. Plaintiffs thereafter appealed to the Court of Appeals, which reversed the trial court, concluding that plaintiffs had raised a genuine issue of material fact under *Woodson* as to whether defendants' actions were substantially certain to cause decedent's death. *Whitaker v. Town of Scotland Neck*, 154 N.C. App. 660, 572 S.E.2d 812 (2002).

The Court of Appeals based its decision in the present case on a multifactor test that it set out in *Wiggins v. Pelikan, Inc.*, 132 N.C. App. 752, 513 S.E.2d 829 (1999). *Whitaker*, 154 N.C. App. at 663-64, 572 S.E.2d at 814. In *Wiggins*, the Court of Appeals applied the following six factors in deciding whether the defendant-employer intentionally engaged in misconduct substantially certain to cause the injury or death of an employee: "(1) Whether the risk that caused the harm existed for a long period of time without causing injury"; "(2) Whether the risk was created by a defective instrumentality with a high probability of causing the harm at issue"; "(3) Whether there was evidence the employer, prior to the accident, attempted to remedy the risk that caused the harm"; "(4) Whether the employer's conduct which created the risk violated state or federal work safety regulations"; "(5) Whether the defendant-employer created a risk by failing to adhere to an industry practice, even though there was no violation of a state or federal safety regulation"; and "(6) Whether the defendant-employer offered training in the safe behavior appropriate in the context of the risk causing the harm." *Wiggins*, 132 N.C. App. at 756-58, 513 S.E.2d at 832-33.

Relying on this test, the Court of Appeals in the present case concluded that summary judgment in favor of defendants was inappropriate because plaintiffs had offered proof of the existence of most of the *Wiggins* factors. *Whitaker*, 154 N.C. App. at 664-65, 572 S.E.2d at 815.

After our thorough review of the facts in the present case, we conclude that the trial court properly granted defendants' motion for summary judgment. Moreover, we conclude that the six-factor test created by the Court of Appeals in *Wiggins* misapprehends the nar-

rowness of the substantial certainty standard set forth in *Woodson v. Rowland.* Accordingly, we explicitly reject the *Wiggins* test and rely solely on the standard originally set out by this Court in *Woodson v. Rowland.*

As this Court has often discussed, the North Carolina Workers' Compensation Act was created to ensure that injured employees receive sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence. *See, e.g., Pleasant v. Johnson,* 312 N.C. 710, 712, 325 S.E.2d 244, 246-47 (1985). In exchange for these "limited but assured benefits," the employee is generally barred from suing the employer for potentially larger damages in civil negligence actions and is instead limited exclusively to those remedies set forth in the Act. *Id.*; *Woodson,* 329 N.C. at 338, 407 S.E.2d at 227.

This Court, however, recognizes an important exception to the general exclusivity provisions of the Workers' Compensation Act where an employee is injured or killed as a result of the intentional misconduct of the employer. *See Pleasant,* 312 N.C. at 713, 325 S.E.2d at 247. In *Woodson,* this Court slightly expanded this exception to include cases in which a defendant employer engaged in conduct that, while not categorized as an intentional tort, was nonetheless substantially certain to cause serious injury or death to the employee. 329 N.C. at 337-44, 407 S.E.2d at 226-30. In such cases, the injured employee may proceed outside the exclusivity provisions of the Act and maintain a common law tort action against the employer. *Id.* at 348, 407 S.E.2d at 233.

In *Woodson v. Rowland,* the defendant-employer was a construction company that specialized in trench excavation. *Id.* at 334, 407 S.E.2d at 225. An employee of the defendant-employer was killed when a fourteen-foot-deep trench in which he was working collapsed. *Id.* at 336, 407 S.E.2d at 225. The factual circumstances surrounding the employee's death in *Woodson* were particularly offensive to this Court. In flagrant disregard of safety regulations and industry-wide standards, the defendant-employer's president had knowingly directed his employees to work in a deep trench with sheer, unstable walls that lacked proper shoring. *Id.* at 345-46, 407 S.E.2d at 231. The hazard of a cave-in was so obvious that the foreman of another construction crew working on the project had emphatically refused to send his men into the trench until it was properly shored. *Id.* at 335, 407 S.E.2d at 225. Moreover, the defendant-employer had been cited

at least four times in the preceding six and a half years for multiple violations of trenching-safety regulations. *Id.* at 345, 407 S.E.2d at 231. Thus, there was sufficient evidence from which "a reasonable juror could determine that upon placing a man in this trench serious injury or death as a result of a cave-in was a substantial certainty rather than an unforeseeable event, mere possibility, or even substantial probability." *Id.*

Based on these specific facts, this Court in *Woodson* defined a narrow exception to the general exclusivity provisions of the North Carolina Workers' Compensation Act. We specifically held that

> when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

*Id.* at 340-41, 407 S.E.2d at 228.

The *Woodson* exception represents a narrow holding in a fact-specific case, and its guidelines stand by themselves. This exception applies only in the most egregious cases of employer misconduct. Such circumstances exist where there is uncontroverted evidence of the employer's intentional misconduct and where such misconduct is substantially certain to lead to the employee's serious injury or death.

In the present case, there is insufficient evidence to reasonably support plaintiffs' contention that defendants intentionally engaged in misconduct knowing that it was substantially certain to cause serious injury or death to decedent. Indeed, the facts of the present case are readily distinguishable from those that gave rise to our holding in *Woodson*.

In *Woodson*, the defendant-employer's president was on the job site and observed first-hand the obvious hazards of the deep trench in which he directed the decedent-employee to work. *Id.* at 335, 407 S.E.2d at 225. Knowing that safety regulations and common trade practice mandated the use of precautionary shoring, the defendant-employer's president nonetheless disregarded all safety measures and intentionally placed his employee into a hazardous situation in

which experts concluded that only one outcome was substantially certain to follow: an injurious, if not fatal, cave-in of the trench. *Id.* at 345-46, 407 S.E.2d at 231-32.

In the present case, there is no similar evidence that defendants were manifestly indifferent to the health and safety of their employees. The Town has a long history of garbage collection, yet there is no evidence of record that the Town had been previously cited for multiple, significant violations of safety regulations, as in *Woodson*. On the day of the accident, none of the Town's supervisors were on-site to monitor or oversee the workers' activities. Decedent was not expressly instructed to proceed into an obviously hazardous situation as in *Woodson*. There is no evidence that defendants knew that the latching mechanism on the truck was substantially certain to fail or that if such failure did occur, serious injury or death would be substantially certain to follow. As discussed in *Woodson*, simply having knowledge of some possibility, or even probability, of injury or death is not the same as knowledge of a substantial certainty of injury or death.

In *Woodson*, evidence was presented from which a jury could reasonably conclude that the defendant-employer's president recognized the immediate hazards of his operation and consciously elected to forgo critical safety precautions. *Id.* at 345, 407 S.E.2d at 231. Here, there is no such evidence. Moreover, in *Woodson*, the employee worked in a deep, narrow trench in which it was impossible for him to escape or avoid injury once the soil around him began to cave in. Here, however, decedent was not so helpless. In sum, the forecast of evidence in the present case fails to establish that defendants intentionally engaged in misconduct knowing that it was substantially certain to cause serious injury or death to decedent. The facts of this case involve defective equipment and human error that amount to an accident rather than intentional misconduct.

We therefore conclude that plaintiffs failed to raise a genuine issue of material fact as to defendants' civil liability under the *Woodson* exception to the general exclusivity provisions of the North Carolina Workers' Compensation Act. Accordingly, we reverse the ruling of the Court of Appeals and instruct that court to reinstate the original order of the Superior Court, Halifax County, granting summary judgment in favor of defendants.

REVERSED.