**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-1420

LINDA ALLEN; JULIE ORD,

Plaintiffs - Appellants,

versus

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant - Appellee.

Appeal from the United States District Court for the Middle
District of North Carolina, at Durham.  James A. Beaty, Jr.,
District Judge. (CA-02-1121)

Submitted:  March 1, 2005          Decided:  April 19, 2005

Before WILKINS, Chief Judge, and WIDENER and TRAXLER, Circuit
Judges.

Affirmed by unpublished per curiam opinion.

Kenneth F. McCallion, MCCALLION & ASSOCIATES, L.L.P., New York, New
York, for Appellants.  C. Matthew Keen, Robert A. Sar, Rachel B.
March, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Raleigh,
North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Linda Allen and Julie Ord (collectively, "Appellants") appeal a district court order dismissing their claims against International Business Machines Corporation (IBM) arising from alleged exposure to toxic mold. We affirm.

I.

Appellants formerly worked in Building 061 of IBM's facility at Research Triangle Park, North Carolina (the building). In late April 2000, water flooded the center of the building after a pipe burst. Within one week of the flood, IBM began removing water-damaged materials from the building. In addition, employees working in water-damaged areas of the building were temporarily reassigned to other buildings. However, employees working outside the water-damaged areas--including Appellants--were not relocated. In connection with the cleanup of the building, IBM submitted building-material and air-quality samples for testing; the results of these tests, provided to IBM in July 2000, revealed the presence of toxic mold.

Appellants continued to work in the building throughout the post-flood renovation process, which lasted approximately seven months. During this time, Appellants began suffering from "constant vertigo, extreme sensitivity to motion and visual stimuli, chronic fatigue, muscle spasms, suppressed immune systems, and significant cognitive disorders." J.A. 26. In November 2000,

after learning that one of their coworkers had developed similar symptoms, Appellants asked IBM to investigate the cause of their ailments; in particular, they expressed concern that toxic mold might be responsible. Soon thereafter, IBM employees inspected the building. According to Appellants, however, this inspection did not include testing for mold and covered only a portion of the building. Nevertheless, the inspectors assured Appellants that the mold in question could be identified through visual inspection and that there was no mold problem in the building.

In December 2000, Allen's physician requested that IBM relocate Allen to another building for six weeks to determine whether her ailments were being caused by something in the building. IBM denied this request, explaining that a company physician had reviewed Allen's medical records and concluded that there was no medical reason to relocate her. Due to their worsening symptoms, Appellants eventually went on medical leave; neither has been able to work since that time. In March 2002, a physician diagnosed Appellants' medical conditions as resulting from exposure to toxic mold in the building.

Appellants subsequently filed this action in North Carolina state court alleging that IBM willfully failed to prevent Appellants' exposure to toxic mold, causing them to suffer numerous health problems. Appellants' complaint, which sought injunctive relief and damages, relied on a judicially created exception to the

3

exclusivity provisions of the North Carolina Workers' Compensation Act. See Woodson v. Rowland, 407 S.E.2d 222, 228 (N.C. 1991) (holding that an employer may be held liable in a civil action when it "intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct").

IBM removed the case to federal court and moved to dismiss Appellants' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In ruling on this motion, the district court noted that Woodson establishes "an extremely demanding standard" for imposing liability against an employer outside the workers' compensation system, Allen v. Int'l Bus. Machs. Corp., 308 F. Supp. 2d 638, 644 (M.D.N.C. 2004), and that a Woodson claim "is only cognizable 'in the most egregious cases of employer misconduct,'" id. at 644-45 (quoting Whitaker v. Town of Scotland Neck, 597 S.E.2d 665, 668 (N.C. 2003)). In particular, the district court recognized that "[f]or a plaintiff to prevail on a Woodson claim, ... there must be 'uncontroverted evidence of the employer's intentional misconduct' and that 'misconduct [must be] substantially certain to lead to the employee's serious injury or death.'" Id. at 645 (quoting Whitaker, 597 S.E.2d at 668) (third alteration in original). The district court determined that Appellants' allegations did not satisfy these rigorous standards because (1) even assuming that IBM knew toxic mold was present in the building, Appellants could not

4

show that IBM knew that the mold was substantially certain to cause severe injury or death; (2) IBM did not violate any safety regulations regarding toxic mold, nor was there any allegation that such standards even existed; and (3) IBM did take some steps to prevent employees' exposure to mold in the building and to investigate Appellants' illnesses.  The district court therefore dismissed Appellants' complaint.

## II.

After reviewing the parties' briefs and the applicable law, we conclude that the district court correctly decided the issues before it.  Accordingly, we affirm on the reasoning of the district court.  See id. at 643-46.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5