IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 19-756

Filed: 21 July 2020

Mecklenburg County, No. 18 CVS 13881

GUADALUPE HIDALGO, ADMINISTRATRIX OF THE ESTATE OF JESUS ENRIQUE HIDALGO, Plaintiff

v.

EROSION CONTROL SERVICES, INCORPORATED, JAMES BERNARD, JEFFREY BYRUM, AND DALLAS GLOVER, Defendants

Appeal by Defendants from Order entered 15 April 2019 by Judge George Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 4 March 2020.

*Butler, Quinn & Hochman, PLLC, by Brian R. Hochman and Ian A. McIntyre, for plaintiff-appellee.*

*McAngus, Goudelock & Courie, PLLC, by Heather G. Connor and Christopher J. Campbell, for defendant-appellant Erosion Control Services, Inc.*

*Dean & Gibson, PLLC, by Michael G. Gibson, for defendant-appellant Dallas Glover.*

HAMPSON, Judge.

**Factual and Procedural Background**

Erosion Control Services, Inc. (ECS) and Dallas Glover (collectively, Defendants) appeal from an Order entered 15 April 2019 denying in part and granting in part Defendants' Motions for Summary Judgment. The Record reflects the following relevant facts:

On 20 July 2016, Jesus Enrique Hidalgo (Decedent) was the victim of a fatal workplace accident. Decedent was employed by ECS, a provider of soil and sediment control services for construction projects. On the date of the accident, Decedent was operating a M8200 Kubota Tractor at a construction site in Mecklenburg County, North Carolina. Decedent was driving the tractor on a slope in an area of the project known as Basin Two when the tractor started to roll. Decedent was ejected from the tractor and fatally injured when the tractor rolled on top of him.

Decedent's mother, Guadalupe Hidalgo (Plaintiff), filed a complaint as Administratrix of Decedent's estate on 17 July 2018 and an amended complaint[1] (Complaint) on 14 January 2019. Plaintiff's Complaint alleged wrongful death due to Defendants' negligence. Plaintiff specifically alleged Defendants ECS, as Decedent's employer, and Bernard, Byrum, and Glover, as owners and officers of ECS, were negligent and grossly negligent by: "replacing the seat of the tractor with one that did not have a seatbelt"; "allowing the tractor to be operated without a seatbelt"; failing to implement safety procedures that would have prevented Decedent from operating the tractor "on a slope where it was certain to roll over"; directing Decedent to operate the tractor on a slope where it was certain to roll over; and failing to provide proper training for Decedent, as an operator, to appreciate the risks of operating the tractor on a slope. Plaintiff contended the alleged actions were

---

[1] Plaintiff amended her complaint to allege only claims under the theory of wrongful death.

intentional and "substantially certain to cause serious injury or death and proximately caused the death of [Decedent]." Defendants answered Plaintiff's Complaint denying negligence on their behalf and moved to dismiss Plaintiff's Complaint. Defendants also filed Motions for Summary Judgment pursuant to Rule 56 of the North Carolina Rules of Civil Procedure.

Subsequent discovery revealed in April 2015, ECS shop manager David White (White) procured a replacement seat for the tractor in question from eBay after the manufacturer was unable to directly provide one. The replacement seat did not include a seatbelt. However, White averred he was unaware of the lack of seatbelt upon purchasing the seat and, further, he was not present when the site crew unpacked and installed the seat in the tractor. Moreover, at the time of the accident on 20 July 2016, Decedent was operating the tractor outside of the designated project area (Basin Three), on a slope in Basin Two, where there was "no reason for him to be driving on the slope if [ECS] w[as] not actively working the slope at the time" and where no other ECS crew members were working. Following the accident, ECS was cited by the Occupational Safety and Health Administration (OSHA) for four workplace safety violations pertaining to the lack of seatbelt and safety measures for the tractor. No evidence was entered into the Record indicating Decedent was specifically directed by ECS or its agents to work in or enter Basin Two at the time of the accident.

The trial court held a hearing on Defendants' Motions for Summary Judgment on 4 April 2019. Defendants argued the exclusive remedy for Plaintiff's claim was within the North Carolina Workers' Compensation Act before the Industrial Commission and therefore that the trial court lacked subject-matter jurisdiction to hear Plaintiff's claims. Plaintiff contended Defendants' negligence was so egregious it fell within the exception to the Workers' Compensation Act's exclusivity provision as articulated by the North Carolina Supreme Court in *Woodson v. Rowland* and therefore Plaintiff could seek relief through a civil action.

On 15 April 2019, the trial court filed its Order Denying in Part and Granting in Part Defendants' Motion for Summary Judgment. The trial court granted summary judgment in favor of individual Defendants Bernard and Byrum. The trial court denied Defendants Glover and ECS's Motions for Summary Judgment on their arguments "based upon lack of subject matter jurisdiction due to the exclusivity provisions of the North Carolina Workers' Compensation Act." Defendants Glover and ECS timely appealed on 29 April 2019. Plaintiff did not appeal the trial court's entry of summary judgment in favor of individual Defendants Bernard and Byrum.

## Issue

The dispositive issue on appeal is whether Plaintiff forecast sufficient evidence to establish Plaintiff's claims fell outside the exclusivity provisions of the North Carolina Workers' Compensation Act under our Supreme Court's decision in *Woodson*

*v. Rowland*, 329 N.C. 330, 341, 407 S.E.2d 222, 228 (1991), to withstand Defendants' Motions for Summary Judgment.

## Analysis

### A. Standard of Review

The denial of a motion for summary judgment is usually considered interlocutory; however, "[t]his Court has appellate jurisdiction because the denial of a motion concerning the exclusivity provision of the Workers' Compensation Act affects a substantial right and thus is immediately appealable." *Fagundes v. Ammons Dev. Grp., Inc.*, 251 N.C. App. 735, 737, 796 S.E.2d 529, 532 (2017) (citation omitted). "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (citation and quotation marks omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Craig v. New Hanover Cty. Bd. of Educ.*, 363 N.C. 334, 337, 678 S.E.2d 351, 354 (2009) (citation and quotation marks omitted).

### B. Plaintiff's *Woodson* Claim

The North Carolina Workers' Compensation Act (the Act), located in Chapter 97 of our General Statutes, was created to "ensure that injured employees receive

sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence." *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003); *see* N.C. Gen. Stat. § 97-9 (2019). However, to balance competing interests between employees and employers, the Act includes an exclusivity provision, which "limits the amount of recovery available for work-related injuries and removes the employee's right to pursue potentially larger damage awards in civil actions." *Woodson*, 329 N.C. at 338, 407 S.E.2d at 227 (citation omitted); *see* N.C. Gen. Stat. § 97-10.1 (2019).

Our Supreme Court carved out an exception to the Act's exclusivity provision in *Woodson* for civil actions brought as a result of conduct that is "tantamount to an intentional tort." 329 N.C. at 341, 407 S.E.2d at 228. Our Supreme Court laid out an exacting standard that plaintiffs must meet in order to escape the exclusivity provision:

> [W]hen an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer.

*Id.* at 340-41, 407 S.E.2d at 228. "Such circumstances exist where there is uncontroverted evidence of the employer's intentional misconduct and where such

misconduct is substantially certain to lead to the employee's serious injury or death." *Whitaker*, 357 N.C. at 557, 597 S.E.2d at 668.

In *Woodson*, the decedent was killed in a tragic workplace accident when the fourteen-foot-deep trench he was working in collapsed on top of him. 329 N.C. at 336, 407 S.E.2d at 226. The facts in *Woodson* demonstrated the defendants, including the defendant-employer and president, blatantly disregarded the safety of the decedent in expressly directing him to work in a trench that was "substantially certain to fail." *Id.* at 345, 407 S.E.2d at 231. The defendant-president, who was present on site at the time of the fatal accident, had a career in "excavating different kinds of soil." *Id.* The defendant-employer "had been cited at least four times in six and one-half years immediately *preceding* th[e] incident for violating multiple safety regulations governing trenching procedures." *Id.* (emphasis added). The defendant-president was not only "aware of safety regulations designed to protect trench diggers from serious injury or death[,]" but he "knew he was not following th[ose] regulations in digging the trench in question." *Id.*; *see also Whitaker*, 357 N.C. at 556, 597 S.E.2d at 668 (noting in *Woodson* "[t]he hazard of a cave-in was so obvious that the foreman of another construction crew working on the project had emphatically refused to send his men into the trench until it was properly shored"). On those facts, the Supreme Court held the plaintiff was not limited by the exclusivity provision of the Act,

although she was entitled to only one recovery. *Woodson*, 329 N.C. at 348, 407 S.E.2d at 233.

In *Whitaker*, our Supreme Court reaffirmed the *Woodson* exception, reiterating it "represents a narrow holding in a fact-specific case" and "applies only in the most egregious cases of employer misconduct." *Whitaker*, 357 N.C. at 557, 597 S.E.2d at 668. In *Whitaker*, the Court reversed this Court and reinstated the trial court's grant of summary judgment in favor of the defendants. *Id.* at 558, 597 S.E.2d at 669. The Court in *Whitaker* determined there was "insufficient evidence to reasonably support plaintiffs' contention that defendants intentionally engaged in misconduct knowing that it was substantially certain to cause serious injury or death to decedent." *Id.* at 557, 597 S.E.2d at 668. Namely, there was "no similar evidence that defendants were manifestly indifferent to the health and safety of their employees"; there was "no evidence of record that the [defendant] had been previously cited for multiple, significant violations of safety regulations"; "[o]n the day of the accident, none of the [defendant's] supervisors were on-site to monitor or oversee the workers' activities"; and the "[d]ecedent was not expressly instructed to proceed into an obviously hazardous situation . . . ." *Id.* at 558, 597 S.E.2d at 668.

Here, taking "all reasonable inferences . . . in the light most favorable to the non-moving party[,]" *Woodson*, 329 N.C. at 344, 407 S.E.2d at 231, we conclude on the Record before us, the facts of the case at hand are more akin to those in *Whitaker*

than in *Woodson*, and thus Plaintiff has not demonstrated Defendants "intentionally engaged in misconduct knowing that it was substantially certain to cause serious injury or death to decedent." *Whitaker*, 357 N.C. at 557, 597 S.E.2d at 668.

First, the Record is devoid of any indication Decedent was expressly directed by Defendants to drive his tractor into Basin Two and onto the slope that resulted in the fatal rollover. In fact, the Record reflects no ECS work was occurring in Basin Two at the time of the accident and no other ECS employees were present in Basin Two to witness the accident. ECS was cited for four OSHA violations *after* the accident from which Plaintiff's case arose. However, unlike the defendant-employer in *Woodson* who had received multiple citations for OSHA violations pertaining to unsafe trenching, no evidence in the Record shows a history or pattern of OSHA violations by ECS pertaining to tractor safety *prior* to the incident in question.

Plaintiff contends Defendant Glover had knowledge the replacement seat for the tractor lacked a seatbelt or, at the very least, that it is a question of fact defeating Defendants' Motions for Summary Judgment; however, that fact, even taken as true, would not meet the high threshold set out by our Supreme Court in *Woodson*. "On a number of occasions, North Carolina courts have rejected *Woodson* claims despite the presence of evidence in the record demonstrating that the workplace at issue was unsafe at the time of the accident." *Blue v. Mountaire Farms, Inc.*, 247 N.C. App. 489, 504, 786 S.E.2d 393, 403 (2016) (citations omitted). Furthermore, "[a]s discussed in

*Woodson*, simply having knowledge of some possibility, or even probability, of injury or death is not the same as knowledge of a substantial certainty of injury or death." *Whitaker*, 357 N.C. at 558, 597 S.E.2d at 668-69.

The Record before us indicates the tractor seat was replaced in April 2015, over a year before Decedent's accident. There is no question the lack of seatbelt on the tractor seat was a violation of OSHA safety regulations, and ECS did not contest that fact. However, the tractor was operated for over a year without the proper seatbelt, and the Record reflects no prior safety incidents. While the lack of a seatbelt created an unsafe condition and may well have made serious injury or death more likely or even probable in the event of an accident, in light of the high bar set by our Supreme Court in *Woodson* and *Whitaker,* this fact alone does not support Plaintiff's argument the lack of seatbelt made it substantially certain death or serious injury would occur when operating the tractor. Even assuming *arguendo* for purposes of Defendants' Motions for Summary Judgment that Defendants' replacement of the seat without a seatbelt was intentional misconduct, Plaintiff has not forecasted such misconduct was substantially certain to lead to Decedent's serious injury or death.

Although we are sensitive to the facts of this case, we emphasize as did our Supreme Court in *Whitaker*, there must be "uncontroverted evidence of the employer's intentional misconduct and where such misconduct is substantially certain to lead to the employee's serious injury or death." *Id.* at 557, 597 S.E.2d at

668. We conclude, on the Record before us, that without more Plaintiff has not forecast evidence of intentional misconduct by Defendants substantially certain to lead to Decedent's death so as to create a genuine issue of material fact sufficient to survive summary judgment on Plaintiff's claims arising under *Woodson*. Thus, the trial court erred in denying Defendants' Motions for Summary Judgment. Consequently, the trial court should have also entered summary judgment in favor of Defendants Glover and ECS.

## **Conclusion**

Accordingly, for the foregoing reasons, we reverse the part of the trial court's Order denying Defendants' Motions for Summary Judgment "based upon lack of subject matter jurisdiction due to the exclusivity provisions of the North Carolina Workers' Compensation Act."[2] We further remand this matter for the trial court to enter Judgment in favor of Defendants.

REVERSED AND REMANDED.

Judges DIETZ and TYSON concur.

---

[2] Plaintiff did not appeal the trial court's grant of summary judgment to the individual Defendants Bernard and Byrum, and those two individual Defendants are not parties to this appeal. Consequently, the portion of the trial court's Order granting summary judgment to Bernard and Byrum is not before us and stands undisturbed.