RACHEL JONES, ADMINISTRATOR OF THE ESTATE OF CARL LEE JONES, PLAINTIFF/APPELLANT v. WILLAMETTE INDUSTRIES, INC.; ALLEN CARTER, INDIVIDUALLY; JEDD LEWIS, INDIVIDUALLY; JIM MULLINS, INDIVIDUALLY; BILL WHITEMAN, INDIVIDUALLY; MIKE RAMSEY, INDIVIDUALLY; AND DOUG DUNN, INDIVIDUALLY, DEFENDANTS/APPELLEES

No. COA94-1448

(Filed 7 November 1995)

**1. Workers' Compensation § 62 (NCI4th)— wrongful death claim—no evidence that employer knew misconduct was substantially certain to cause death or serious injury**

In a wrongful death action against defendant employer where the evidence tended to show that the employee died while cleaning the inside of a boiler used for disposing of waste from manufacturing plywood sheeting, the trial court properly entered summary judgment for defendant where the evidence, though indicating that much more might have been done to ensure workers' safety, did not show that defendant engaged in misconduct knowing it was substantially certain to cause death or serious injury.

**Am Jur 2d, Workers' Compensation § 79.**

**What conduct is willful, intentional, or deliberate within workmen's compensation act provision authorizing tort action for such conduct. 96 ALR3d 1064.**

**2. Workers' Compensation § 69 (NCI4th)— intentional tort claim against co-employees—insufficiency of evidence**

Plaintiff's claim against her husband's co-employees for intentional torts were properly dismissed where the evidence that defendants instructed the employee to clean the inside of a boiler without ensuring that adequate safety measures were in place and being used did not support inferences that they intended for the employee to be injured or that they were manifestly indifferent to the consequences.

**Am Jur 2d, Workers' Compensation § 100.**

**What conduct is willful, intentional, or deliberate within workmen's compensation act provision authorizing tort action for such conduct. 96 ALR3d 1064.**

JONES v. WILLAMETTE INDUSTRIES, INC.

[120 N.C. App. 591 (1995)]

### 3. Labor and Employment § 192 (NCI4th)— cleaning boiler— no ultrahazardous activity

Cleaning a boiler was not an "ultrahazardous activity" for which defendant employer was strictly liable, since the risk of serious harm could be eliminated by taking appropriate safety measures.

### Am Jur 2d, Negligence § 403.

Appeal by plaintiff from judgment entered 16 September 1994 by Judge James C. Spencer, Jr., in Chatham County Superior Court. Heard in the Court of Appeals 4 October 1995.

Defendant Willamette Industries, Incorporated, (Willamette) manufactures plywood sheeting. The manufacturing process operates on a boiler system, the heart of which is a fluid flame burner. The burner is an approximately fifty foot high by twenty-five foot wide cylindrical vessel. The bottom of the vessel is covered with nozzles that blow air and sand up into the vessel to mix with wood and other waste products that are put into the vessel. This process generates heat and steam for the plant, and the boiler system must be in operation during the manufacturing process.

In 1990 Willamette, which bought the plant in 1988, disposed of manufacturing waste by burning it in an open pit outside its facility. After receiving notification in 1990 from North Carolina's Department of Environment, Health and Natural Resources to discontinue that practice, Willamette began burning waste in the vessel.

Plaintiff alleges that Willamette burned waste glue and glue resin in the vessel, and that this allegedly improper practice contributed to the buildup of residue known as slag. At times the slag was soft and granular, while at others it was hard and glassy. When it built up the plant would have to shut down to allow the employees to clean the vessel. Willamette's predecessor in ownership scheduled three or four major cleanings per year in addition to unscheduled forty-eight hour cleanings as needed. Willamette reduced the scheduled cleanings to one or two per year, but conducted more frequent forty-eight hour cleanings.

During cleanings, Willamette's employees had to wait for the vessel to cool. Even then, temperatures inside the vessel hovered around one hundred degrees or more. The only entrance to the vessel was a

two foot manhole that the employees had to climb through. No offi-cial cleaning or safety policy existed for cleaning the vessel. Typically, two or three employees would enter the vessel at a time. Because the floor was covered with nozzles, the employees put plywood down so they could stand inside the vessel. While one employee held an exten-sion ladder, another stood on it and began chipping away the slag built up on the walls. When the slag fell to the ground, a third employee broke up the pieces, known as "clinkers," into bits small enough to pass through the vessel floor.

Sometimes the slag was minimal, while other times it was several feet thick. In 1990, two Willamette employees were on a scaffold chip-ping off slag when a two foot thick, doughnut shaped piece broke free and fell to the ground. Although neither employee was injured, they were frightened. They did not report the incident to management, but evidence indicates that at least one supervisor became aware of it several months later. In discovery documents, the remaining supervi-sors denied knowledge of the 1990 incident.

In 1992 plaintiff's decedent Carl Jones, Willamette's lead boiler operator, and two others entered the vessel to clean it. The slag was the worst it had ever been and appeared to be approximately three feet thick. As one employee held the ladder, another began chipping the slag from the walls. Jones worked on the floor breaking up clink-ers. Suddenly, a fifteen foot sheet of slag fell from the wall and landed on Jones, crushing him. He died six days later.

An Occupational Safety and Health Administration (OSHA) inves-tigation following the accident found Willamette in "serious" viola-tion. OSHA found that Willamette did not have a confined space pro-gram in place, and described Jones' death as a "preventable accident." OSHA also noted that Willamette had no prior citations against it.

Plaintiff filed this wrongful death action against Willamette and the individual defendants; alleging claims under *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), and *Pleasant v. Johnson*, 312 N.C. 710, 325 S.E.2d 244 (1985). Specifically, plaintiff alleged Willamette's willful, wanton, and gross negligence because of (1) a lack of training regarding the hazards involved, (2) an absence of safety or rescue equipment, (3) an absence of safety training, advice, or assistance, and (4) a failure to allow adequate mainte-nance. She alleged that Willamette and the individual defendants

were jointly and severally liable because they encouraged ignorance to save money, failed to supervise properly, and failed to take remedial actions.

Defendants moved for summary judgment. On 16 September 1994 the trial court allowed defendants' motion and dismissed plaintiff's claims. Plaintiff appeals.

*Lewis & Daggett, P.A., by Michael Lewis, and Lore & McClearen, by R. James Lore, for plaintiff appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by Robert W. Sumner, David H. Batten, and Edward C. LeCarpentier, III, for defendant appellees.*

ARNOLD, Chief Judge.

[1] Plaintiff alleges the trial court erred in granting summary judgment for defendants. She first contends the trial court committed reversible error in granting summary judgment on the *Woodson* claim. We disagree.

In *Woodson*, the Court held that "when an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee . . . may pursue a civil action against the employer." *Woodson*, 329 N.C. 330, 340-41, 407 S.E.2d 222, 228. "The conduct must be so egregious as to be tantamount to an intentional tort." *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 239, 424 S.E.2d 391, 395 (1993) (affirming dismissal of *Woodson* claim where employer instructed employee to work at an unguarded machine in a textile factory). Intent may be actual or constructive. *Woodson*, 329 N.C. 330, 407 S.E.2d 222. For the latter, intent will extend to " 'those [consequences] which the actor believes are substantially certain to follow from what the actor does.' " *Id.* at 341, 407 S.E.2d at 229 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 8, at 35 (5th ed. 1984)).

Willamette had not been cited for any safety violations of this nature in the past. *See Vaughn v. J. P. Taylor Co.*, 114 N.C. App. 651, 442 S.E.2d 538, *disc. review denied*, 336 N.C. 615, 447 S.E.2d 413 (1994) (noting that plaintiff's employer had no prior OSHA citations for safety violations). In addition, evidence showed that after the 1990 incident, in the only other similar incident, the employees involved did not inform their supervisors. As noted above, however, defendant

Mullins did become aware of the incident several months later. One employee who was in the vessel when the slag collapsed stated that, "We just didn't figure—we just didn't figure the darn wall was going to let go because of being cooled down. It was just one of them things we just didn't figure." The cleaning procedure used by Jones and the other employees was the same procedure used, without incident, by Willamette's predecessor in ownership. Plaintiff has failed to show that Willamette engaged in misconduct *knowing* it was substantially certain to cause death or serious injury. *See Powell v. S & G Prestress Co.*, 114 N.C. App. 319, 442 S.E.2d 143 (1994).

Plaintiff urges that summary judgment was improper because she presented affidavits from two experts who stated that there was a substantial certainty of death or serious injury under the conditions in place at the plant. We do not agree. A *Woodson* claim cannot be made out or saved from summary judgment simply because a nonlegal expert states that *Woodson's* test has been met. *See Yates v. J. W. Campbell Electrical Corp.*, 95 N.C. App. 354, 382 S.E.2d 860 (1989). While much more might have been done to ensure workers' safety, the evidence does not show that Willamette engaged in misconduct *knowing* it was substantially certain to cause death or serious injury. Summary judgment for defendant Willamette was not error.

[2] Next, plaintiff contends the trial court erred by dismissing her *Pleasant* claims brought against the individual defendants. Again, we disagree.

In *Pleasant,* the Court recognized that the Workers' Compensation Act does not bar suit against a co-employee for intentional torts, and stated that "injury to another resulting from willful, wanton and reckless negligence should also be treated as an intentional injury for purposes of our Workers' Compensation Act." *Pleasant,* 312 N.C. 710, 715, 325 S.E.2d 244, 248. The Court then held that "the Workers' Compensation Act does not shield a co-employee from common law liability for willful, wanton and reckless negligence." *Id.* at 716, 325 S.E.2d at 249. The willful, wanton and reckless negligence standard is less demanding than *Woodson's* substantial certainty, and a "constructive intent to injure may be inferred when the conduct of the defendant is manifestly indifferent to the consequences of the act." *Pendergrass,* 333 N.C. 233, 238, 424 S.E.2d 391, 394 (holding that co-employees who instructed employee to work at unguarded machine were not manifestly indifferent to the consequences of his doing so).

JONES v. WILLAMETTE INDUSTRIES, INC.

[120 N.C. App. 591 (1995)]

The individual defendants in this case comprise the supervisory hierarchy at Willamette and are properly classified as co-employees. *Dunleavy v. Yates Construction Co.*, 106 N.C. App. 146, 416 S.E.2d 193, *disc. review denied*, 332 N.C. 343, 421 S.E.2d 146 (1992). The evidence showed that the cleaning procedures had been used by Willamette and its predecessor without, for the most part, injury or incident. It also showed that most of the supervisors were not aware of the 1990 incident, in part because the employees did not report it. Moreover, no one had been injured using these procedures. An OSHA report concluded that "[s]ince there had been no reportable illness or accident related to this process, management felt the process was safe." Therefore, although supervisory personnel at Willamette should have ensured that adequate and appropriate safety measures were in place, and being used, including a confined space program, this does not support an inference that they intended for Jones to be injured, nor does it support an inference that they were manifestly indifferent to the consequences. *See Pendergrass*, 333 N.C. 233, 424 S.E.2d 391.

[3] Finally, plaintiff contends that Willamette is strictly liable for this "ultrahazardous activity." She argues that "cleaning out the boiler under the conditions created by Willamette could not be done safely, and was therefore ultra-hazardous." We do not agree with plaintiff's characterization of this activity.

To date, blasting is the only activity recognized in North Carolina as ultrahazardous. *Woodson*, 329 N.C. 330, 407 S.E.2d 222. Consequently, those responsible are held strictly liable for damages, mainly because the risk of serious harm cannot be eliminated with reasonable care. *Id.* The evidence here shows that the risk of serious harm can be eliminated by, among other things, implementing a confined space program, increasing the number of major cleanings per year, adding safety harnesses and lifelines, and training employees responsible for cleaning on the hazards involved and the precautions to be taken. Therefore, this activity cannot be properly characterized as ultrahazardous, and the trial court did not err by granting summary judgment on this claim.

The trial court's order is

Affirmed.

Judges GREENE and SMITH concur.