TAMMY C. EDWARDS, Administratrix of the Estate of Paul Roger Edwards, Plaintiff v. GE LIGHTING SYSTEMS, INC. and GENERAL ELECTRIC COMPANY, Defendants

No. COA08-219

(Filed 4 November 2008)

**1. Appeal and Error— appealability—denial of summary judgment—*Woodson* claim—substantial right**

Although the general rule is that a party may not appeal the denial of a motion for summary judgment, defendant employer is entitled to an immediate appeal of an order denying summary judgment on a *Woodson* claim based on a substantial right because the North Carolina Workers' Compensation Act grants employers who comply with the Act immunity from suit which would be lost if the case was permitted to go to trial.

**2. Wrongful death— *Woodson* claim—judicial abrogation of statutory immunity**

Although defendant contends the trial court erred in a wrongful death action by denying defendant's motion for summary judgment on the ground that judicial abrogation of defendant's statutory immunity from suit violated the separation of powers of the North Carolina Constitution, this issue is controlled by *Woodson*, 329 N.C. 330 (1991), and is without merit.

**3. Wrongful Death— *Woodson* claim—failure to state a claim**

The trial court erred by denying defendant employer's motion for summary judgment in an action to recover for an employee's death from carbon monoxide poisoning based on plaintiff's failure to forecast evidence to establish a claim under *Woodson*, 329 N.C. 330 (1991), because: (1) the evidence taken in the light most favorable to plaintiff failed to show that defendant knew its con-

EDWARDS v. GE LIGHTING SYS., INC.

[193 N.C. App. 578 (2008)]

duct was substantially certain to cause serious injury or death to decedent; (2) although plaintiff presented evidence relating to the results of investigations following the accident, including expert testimony regarding the likelihood of an accident, there was no evidence that defendant knew, prior to decedent's death, that a carbon monoxide leak was substantially certain to occur; (3) although the evidence tended to show defendant did not adequately maintain its equipment, even a knowing failure to provide adequate safety equipment in violation of OSHA regulations does not give rise to liability under *Woodson*; (4) defendant has never been cited by OSHA prior to the accident for excess carbon monoxide emissions, for failing to continuously monitor carbon monoxide levels, or for failing to implement Process Safety Management which is a set of business regulations that use a statutorily-defined level of certain chemicals in a manufacturing process; and (5) in contrast to *Woodson* where the employer intentionally ordered the decedent to work in a known dangerous condition, decedent volunteered to work extra hours after his shift and chose to take a break behind the annealing ovens where the carbon monoxide concentration was very high.

Appeal by defendant G.E. Lighting Systems, Inc. from judgment entered 10 December 2007 by Judge Mark E. Powell in Henderson County Superior Court. Heard in the Court of Appeals 8 October 2008.

*Michaels & Michaels, P.A., by John A. Michaels, and Van Winkle, Buck, Wall, Starnes & Davis, P.A., by Allan R. Tarleton, for plaintiff-appellee.*

*Smith Moore, L.L.P., by Jon Berkelhammer, Jeri Whitfield, and Lisa Shortt, and for defendant-appellant.*

*Hedrick, Gardner, Kincheloe & Garofalo, L.L.P., by J. Douglas Grimes for Amicus Curiae.*

STEELMAN, Judge.

Where plaintiff's forecast of evidence failed to establish a claim under *Woodson v. Rowland*, the trial court erred in denying defendant's motion for summary judgment.

## I.  Factual and Procedural Background

Defendant General Electric Lighting Systems, Inc. ("GELS") is a subsidiary of defendant General Electric Company ("G.E."). GELS

manufactures industrial and highway lights through a process which requires metal parts to be baked in annealing ovens in an oxygen-free gas which contains a high concentration of carbon monoxide. The oxygen-free gas is produced by an exothermic generator called a DX generator. The annealing process is classified by G.E. as a "High Risk Operation."

In December 2003, plaintiff's decedent, Roger Edwards, was employed by GELS as an annealing oven operator in GELS's manufacturing plant located in Hendersonville, North Carolina. On or about 4 December 2003, while taking a break behind one of the annealing ovens between the second and third shifts, decedent died from carbon monoxide poisoning. An investigation by the North Carolina Department of Labor, Division of Occupational Safety and Health ("OSHA") following the accident revealed that equipment involved with the annealing ovens was leaking carbon monoxide, which caused decedent's death. GELS was subsequently cited by OSHA for a number of "serious" safety violations, but had never been cited for OSHA violations related to carbon monoxide levels at the plant prior to the death of plaintiff's intestate.

On 1 September 2005, Tammy Edwards, the administratrix of decedent's estate, filed a wrongful death action against defendants in Henderson County Superior Court. The complaint alleged the following as willful and wanton conduct on the part of defendants: (1) failure to have in place certain safety precautions and carbon monoxide monitors; (2) failure to properly train personnel in the use of the equipment and detection of safety hazards related to the equipment; (3) failure to follow generally accepted safety and maintenance recommendations; and (4) failure to provide effective ventilation. The complaint further alleged that as a result of defendants' conduct, plaintiff was entitled to recover both compensatory and punitive damages.

On 18 May 2007, defendants filed a motion for summary judgment under Rule 56 of the North Carolina Rules of Civil Procedure. Following a hearing on 12 October 2007, Judge Powell entered an order denying defendants' motion for summary judgment. Defendant GELS moved for reconsideration of this order, and on 18 January 2008 the trial court denied GELS's motion for reconsideration. GELS appeals.

**EDWARDS v. GE LIGHTING SYS., INC.**

[193 N.C. App. 578 (2008)]

## II.  Interlocutory Appeal

**[1]** We must first address plaintiff's motion seeking dismissal of GELS's appeal as interlocutory.

"An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). Generally, a party has no right of appeal from an interlocutory order. *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994). An exception exists when the order will deprive the party of a substantial right absent an immediate appeal. *See* N.C. Gen. Stat. § 7A-27(d)(1); N.C. Gen. Stat. § 1-277(a) (2007). "As a general rule, a moving party may not appeal the denial of a motion for summary judgment because ordinarily such an order does not affect a 'substantial right.' " *Bockweg v. Anderson*, 333 N.C. 486, 490, 428 S.E.2d 157, 160 (1993).

GELS acknowledges that this appeal is interlocutory, but argues that appellate review is necessary on the grounds that the North Carolina's Workers' Compensation Act grants employers who comply with the Act immunity from suit, which would be lost if the case is permitted to go to trial. GELS contends that this immunity from suit affects a substantial right.

This issue is controlled by our Supreme Court's holding in *Burton v. Phoenix Fabricators & Erectors, Inc.*, 362 N.C. 352, 661 S.E.2d 242 (2008). In *Burton*, the plaintiffs brought a wrongful death action against the decedents' employer pursuant to *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). The trial court denied the employer's motion to dismiss, and the employer sought to appeal the trial court's order. This Court found the employer's appeal to be interlocutory and dismissed the case. The North Carolina Supreme Court held "that the order of the trial court denying defendant's motion to dismiss affects a substantial right and will work injury if not corrected before final judgment[.]" *Burton* at 352, 661 S.E.2d at 242-43. The Court allowed the employer's petition for discretionary review and remanded the case to this Court for consideration on the merits. *Id.*

This case is in the identical posture to that in *Burton*. This Court is bound by the holdings of the Supreme Court. *Rogerson v. Fitzpatrick*, 121 N.C. App. 728, 732, 468 S.E.2d 447, 450 (1996). We hold that GELS's appeal is properly before this Court.

### III.  Judicial Abrogation of Immunity

[2] In its first argument, GELS contends that the trial court erred in denying its motion for summary judgment on the grounds that "judicial abrogation of GELS's statutory immunity from suit violates the separation of powers of the North Carolina Constitution." We disagree.

This issue is controlled by the North Carolina Supreme Court's holding in *Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991). We are bound by the decision in *Woodson, see Rogerson* at 732, 468 S.E.2d at 450, and this argument is without merit.

### IV.  The *Woodson* Doctrine

[3] In its next argument, GELS contends that the trial court erred in denying its motion for summary judgment because the complaint failed to state a claim for relief as provided for in *Woodson*. We agree.

Our standard of review of a trial court's ruling on a motion for summary judgment is *de novo*, and "this Court's task is to determine, on the basis of the materials presented to the trial court, whether there is a genuine issue as to any material fact and whether the moving party is entitled to judgment as a matter of law." *Coastal Plains Utils., Inc. v. New Hanover Cty.*, 166 N.C. App. 333, 340, 601 S.E.2d 915, 920 (2004) (citation omitted). "There is no genuine issue of material fact where a party demonstrates that the claimant cannot prove the existence of an essential element of his claim . . ." *Harrison v. City of Sanford*, 177 N.C. App. 116, 118, 627 S.E.2d 672, 675 (2006) (citation omitted). "All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Collingwood v. G.E. Real Estate Equities, Inc.*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989) (citation omitted).

The North Carolina Workers' Compensation Act grants employers who fall under the purview of the act immunity from suit for civil negligence actions. *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003); N.C. Gen. Stat. § 97-10.1 (2007). In exchange for this immunity, the Act imposes liability, including medical expenses and lost income, on employers for work-related injuries "without [the worker] having to prove employer negligence or face affirmative defenses such as contributory negligence and the fellow servant rule." *Woodson v. Rowland*, 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991) (citation omitted).

**EDWARDS v. GE LIGHTING SYS., INC.**

[193 N.C. App. 578 (2008)]

In *Woodson v. Rowland,* the North Carolina Supreme Court enunciated a limited exception to the exclusivity provisions of the Workers' Compensation Act and held that an employee may pursue a civil action against his or her employer in situations in which the employer "intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct[.]" *Woodson* at 340, 407 S.E.2d at 228. Our courts have defined "substantial certainty" as "more than the 'mere possibility' or 'substantial probability' of serious injury or death, . . . [but] less than 'actual certainty.' " *Pastva v. Naegele Outdoor Advertising,* 121 N.C. App. 656, 658-59, 468 S.E.2d 491, 493 (1996) (quotations omitted).

The cases following *Woodson* establish that *Woodson* did little, if anything, to expand the well-established principle that employers are not immune from tort liability based on their own intentional acts. *See, e.g., Pendergrass v. Card Care, Inc.,* 333 N.C. 233, 239, 424 S.E.2d 391, 395 (1993) ("The conduct must be so egregious as to be tantamount to an intentional tort."). In *Whitaker v. Town of Scotland Neck,* our Supreme Court emphasized that "[t]he *Woodson* exception represents a narrow holding in a fact-specific case, and its guidelines stand by themselves. This exception applies only in the most egregious cases of employer misconduct." *Whitaker* at 557, 597 S.E.2d at 668. The Supreme Court rejected a multifactor test set out by the Court of Appeals in *Wiggins v. Pelikan, Inc.,* 132 N.C. App. 752, 513 S.E.2d 829 (1999), and reiterated that the proper standard of substantial certainty was the one originally set out in *Woodson v. Rowland,* which was "uncontroverted evidence of the employer's intentional misconduct and where such misconduct is substantially certain to lead to the employee's serious injury or death." *Id.*

In the instant case, the evidence taken in the light most favorable to plaintiff tends to show the following facts and circumstances. GELS's employees were inadequately trained on the hazards of carbon monoxide, and the employees were not instructed on the signs and symptoms of carbon monoxide poisoning. In the weeks prior to the accident, decedent and other annealing oven operators complained to GELS supervisors that they were suffering from headaches, a symptom of carbon monoxide poisoning. Plaintiff contends that no action was taken by GELS in response to these complaints. As to GELS's maintenance of the equipment at the plant, plaintiff's evidence tended to show that: (1) there were problems and delays in ordering parts for the proper maintenance of the equipment;

(2) preventive maintenance had not been performed on the annealing furnaces or the DX generator in the two years preceding the accident; (3) GELS had not performed regular "smoke tests" on the furnaces to ensure that the seals and gaskets were intact; (4) the seals and gaskets on the furnaces had not been replaced; (5) one of the flues used to exhaust the excess gas produced by the DX generator was partially blocked by a sheet of metal; (6) GELS's budget for maintenance of equipment had been reduced in the years preceding the accident; and (7) GELS failed to implement recommendations of SM&E, a safety consulting firm hired by GELS, including the installation of carbon monoxide monitors. Plaintiff also asserted that GELS "obstruct[ed] OSHA's investigation [following the accident] and tamper[ed] with evidence."

Plaintiff's forecast of evidence failed to establish a claim under *Woodson*. There was no evidence that GELS knew its conduct was substantially certain to cause serious injury or death to decedent. Although plaintiff presented evidence relating to the results of investigations following the accident, including expert testimony regarding the likelihood of an accident, there is no evidence that GELS knew, prior to decedent's death, that a carbon monoxide leak was substantially certain to occur. *See Jones v. Willamette Indus., Inc.*, 120 N.C. App. 591, 595, 463 S.E.2d 294, 297 (1995) ("A *Woodson* claim cannot be made out or saved from summary judgment simply because a non-legal expert states that *Woodson's* test has been met."); *see also Mickles v. Duke Power Co.*, 342 N.C. 103, 463 S.E.2d 206 (1995). Likewise, although the evidence tended to show that GELS did not adequately maintain its equipment, even a "knowing failure to provide adequate safety equipment in violation of OSHA regulations [does] not give rise to liability under . . . *Woodson* . . ." *Mickles* at 112, 463 S.E.2d at 212 (citing *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 424 S.E.2d 391 (1993)); *see also Jones*, 120 N.C. App. 591, 463 S.E.2d 294. Unlike the employer in *Woodson*, who had received four citations for violating safety procedures in the six and a half years preceding the incident, GELS had never been cited by OSHA prior to the accident for excess carbon monoxide emissions, for failing to continuously monitor carbon monoxide levels, or for failing to implement Process Safety Management, a set of business regulations that use a statutorily-defined level of certain chemicals in a manufacturing process. *See Vaughan v. J. P. Taylor Co.*, 114 N.C. App. 651, 654, 442 S.E.2d 538, 540 (1994) (noting that plaintiff's employer had no prior OSHA citations for safety violations). Further, in contrast to *Woodson*, where the employer intentionally ordered the decedent to work in a known

dangerous condition, in the instant case, decedent volunteered to work extra hours after his shift, and chose to take a break behind the annealing ovens, where the carbon monoxide concentration was very high. Although plaintiff contends that GELS could have done more to ensure its workers' safety, "the evidence does not show that [the employer] engaged in misconduct *knowing* it was substantially certain to cause death or serious injury." *Jones* at 595, 463 S.E.2d at 297.

The conduct of GELS and its supervisors did not rise to the level of misconduct described in *Woodson*. Plaintiff did not show that GELS willfully exposed decedent or any other employees to the hazard of carbon monoxide poisoning, but only that GELS was aware that the annealing process was a high risk operation which employed a toxic concentration of carbon monoxide, that there was a possibility that the equipment would leak, and that employees would be exposed to the leaking carbon monoxide.

We hold that there was no genuine issue of material fact, and that GELS was entitled to judgment as a matter of law. The trial court erred in denying GELS's motion for summary judgment. The order of the trial court is reversed and this matter remanded to the trial court for entry of an order dismissing plaintiff's action as to GELS.

REVERSED and REMANDED.

Judges TYSON and STROUD concur.