GREGORY BRYANT GAY, Plaintiff,
v.
CITY OF ROCKY MOUNT, a North Carolina Municipal Corporation, Defendant.
No. COA09-33
Court of Appeals of North Carolina
Filed August 4, 2009
This case not for publication
Gay & Jackson, L.L.P., by Darren G. Jackson and Andy W. Gay, for Plaintiff.
Poyner Spruill LLP, by Richard J. Rose and Timothy W. Wilson, for Defendant.
STEPHENS, Judge.

I. Factual Background and Procedural History
Plaintiff Gregory Bryant Gay was employed by Defendant City of Rocky Mount as a first class lineman for electrical utilities. On 17 June 2004, Plaintiff was electrocuted while transferring existing energized conductors to a new utility pole. Plaintiff was working in the bucket of a boom truck and had a section of the un-energized line, which was to be spliced into the "hot" line, in the bucket. Plaintiff was not wearing rubber insulating sleeves.
On 12 June 2007, Plaintiff filed a complaint against Defendant in Edgecombe County Superior Court seeking compensatory damages for the injuries he sustained as a result of being electrocuted. Plaintiff alleged that Defendant's "conduct was intentional and was with the knowledge that its actions were substantially certain to cause serious injury or death[.]" On 4 September 2008, Defendant filed a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. By order entered 14 November 2008, Judge Griffin granted Defendant's motion to dismiss. From that order, Plaintiff appeals.

II. Standard of Review
When considering a motion to dismiss under Rule 12(b)(6), the court must decide "`whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory.'" Block v. Cty. of Person, 141 N.C. App. 273, 277, 540 S.E.2d 415, 419 (2000) (quoting Harris v. NCNB, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)). The complaint must be construed liberally and the court "should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." Id. at 27778, 540 S.E.2d at 419. A trial court's order granting a motion to dismiss under Rule 12(b)(6) is reviewed de novo on appeal. Leary v. N.C. Forest Prods., Inc., 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, aff'd per curiam, 357 N.C. 567, 597 S.E.2d 673 (2003).

III. Discussion
The issue raised in the present case is whether Plaintiff's complaint alleges facts sufficient to support a claim under the narrowly defined Woodson exception to the general exclusivity provisions of the North Carolina Workers' Compensation Act. See Woodson v. Rowland, 329 N.C. 330, 407 S.E.2d 222 (1991); see also N.C. Gen. Stat. § 97-10.1 (2007) (excluding all rights and remedies against employers other than those specifically set forth in the Workers' Compensation Act). For the reasons discussed below, we conclude that Plaintiff's complaint does not state a Woodson claim, and, thus, the trial court properly granted Defendant's motion to dismiss.
Generally, the Workers' Compensation Act provides the exclusive remedy for an employee injured in a workplace accident. Regan v. Amerimark Bldg. Prods., Inc., 118 N.C. App. 328, 330, 454 S.E.2d 849, 851, disc. review denied, 340 N.C. 359, 458 S.E.2d 189 (1995), cert. denied, 342 N.C. 659, 467 S.E.2d 723 (1996). However, in Woodson, our Supreme Court created an exception allowing an employee to assert a claim against an employer for civil liability when the employer "intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct[.]" Woodson, 329 N.C. at 340-41, 407 S.E.2d at 228. "This exception applies only in the most egregious cases of employer misconduct." Whitaker v. Town of Scotland Neck, 357 N.C. 552, 557, 597 S.E.2d 665, 668 (2003).
"`Substantial certainty' under Woodson is more than the `mere possibility' or `substantial probability' of serious injury or death. No one factor is determinative in evaluating whether a plaintiff has stated a valid Woodson claim; rather, all of the facts taken together must be considered." Regan, 118 N.C. App. at 331, 454 S.E.2d at 852 (internal citation omitted).
In Woodson, the defendant was a construction company that specialized in trench excavation. An employee of the defendant was killed when a fourteen-foot-deep trench in which he was working collapsed. In flagrant disregard of safety regulations and industry-wide standards, the defendant's president had knowingly directed its employees to work in a deep trench with sheer, unstable walls that lacked proper shoring. The hazard of a cave-in was so obvious that the foreman of another construction crew working on the project had emphatically refused to send his men into the trench until it was properly shored. Moreover, the defendant had been cited at least four times in the preceding six and a half years for multiple violations of trenching-safety regulations. The North Carolina Supreme Court determined that there was sufficient evidence from which "a reasonable juror could determine that upon placing a man in this trench serious injury or death as a result of a cave-in was a substantial certainty rather than an unforeseeable event, mere possibility, or even substantial probability." Woodson, 329 N.C. at 345, 407 S.E.2d at 231.
This Court has reversed the grant of a Rule 12(b)(6) motion to dismiss a Woodson action sparingly, and only where the complaint alleged that the employer had actual knowledge that the working conditions at issue were substantially certain to cause serious injury, and nevertheless required the employee to continue to work in such conditions. See Pastva v. Naegele Outdoor Adver., Inc., 121 N.C. App. 656, 657-58, 468 S.E.2d 491, 492-93 (defendant directed employee to work on a billboard despite defendant's knowledge that the billboard was unsafe and dangerous immediately before it collapsed, and defendant had been cited and fined numerous times by governmental authorities for workplace safety violations), disc. review denied, 343 N.C. 308, 471 S.E.2d 74 (1996); Arroyo v. Scottie's Prof'l Window Cleaning, Inc., 120 N.C. App. 154, 156-57, 461 S.E.2d 13, 14-15 (1995) (defendant directed employee to clean protruding windows from a small ledge while leaning off-balance without fall protection after defendant was warned that the employee would fall if not anchored, and defendant had been cited several times by OSHA for failing to have safety lines for employees); Regan, 118 N.C. App. at 329-30, 454 S.E.2d at 851 (defendant failed to inform employee that emergency cutoff switches, installed by defendant on employee's paint machine after other employees had suffered serious injury and death as a result of getting caught in the machine, were not functioning properly).
By contrast, North Carolina appellate courts have consistently affirmed the trial court's grant of a Rule 12(b)(6) motion to dismiss a Woodson action. See, e.g., Pendergrass v. Card Care Inc., 333 N.C. 233, 424 S.E.2d 391 (1993); Edwards v. G.E. Lighting Sys., Inc., __ N.C. App. __, 668 S.E.2d 114 (2008); Cameron v. Merisel, Inc., 163 N.C. App. 224, 593 S.E.2d 416 (2004). In Edwards, the evidence tended to show that the defendant company did not adequately maintain its equipment. However, this Court held that "even a `knowing failure to provide adequate safety equipment in violation of OSHA regulations [does] not give rise to liability under . . . Woodson[.]'" Edwards, __ N.C. App. at __, 668 S.E.2d at 118 (quoting Mickles v. Duke Power Co., 342 N.C. 103, 112, 463 S.E.2d 206, 212 (1995)). This Court also recognized that "[u]nlike the employer in Woodson, who had received four citations for violating safety procedures in the six and a half years preceding the incident, [the defendant company] had never been cited by OSHA prior to the accident" for the conditions giving rise to the employee's death. Id. Finally, although the plaintiff contended that the defendant company "could have done more to ensure its workers' safety," id., this Court concluded that "`the evidence does not show that [the employer] engaged in misconduct knowing it was substantially certain to cause death or serious injury.'" Id. (quoting Jones v. Willamette Indus., Inc., 120 N.C. App. 591, 595, 463 S.E.2d 294, 297 (1995), disc. review denied, 342 N.C. 656, 467 S.E.2d 714 (1996)).
In this case, Plaintiff has alleged, in pertinent part, the following:
8. On June 17, 2004, Defendant's employees, including the Plaintiff, were transferring existing conductors to a new utility pole. Supervisors for Defendant were on site . . . .
9. These existing conductors were energized with 7200 volts.
10. Plaintiff was working in the bucket of a boom truck and had a section of the un-energized line to be spliced into the hot line in the bucket. This section is also known as the "tail." A lead lineman was working directly above the Plaintiff.
11. Defendant's employees' standard practice was to place the tail of the cable being spliced into the bucket with the employee.
12. The vehicles Defendant's employees were working from were not grounded.
13. Plaintiff was not wearing rubber insulating sleeves because they were not issued by Defendant.
14. Defendant allowed Plaintiff to work too close to energized conductors, although fully aware of said conduct. However, other more experienced employees were allowed to work on de-energized lines.
15. Plaintiff was electrocuted while working on the live line.
16. Defendant Rocky Mount's conduct was intentional and was with the knowledge that its actions were substantially certain to cause serious injury or death and was done with manifest indifference to the consequences to the Plaintiff in that it:
a. Allowed the standard operating practice of having the un-energized tail in the bucket with the employee in violation of OSHA regulations and good safety practices;
b. Permitted employees to transport a conductive material in close proximity to live line work in violation of OSHA regulations and good safety practices;
c. Required employees to work on high voltage power lines without providing rubber sleeves in violation of OSHA regulations and good safety practices;
d. Allowed employees to work too close to live power lines and without having the work vehicles properly grounded in violation of OSHA regulations and good safety practices;
e. Allowed employees to use strap hoists improperly in violation of OSHA regulations and good safety practices;
f. Failed to provide adequate supervision of its employees and/or agents to insure [sic] they were complying with OSHA rules and safety practices;
g. Failed to provide adequate conditions to protect safety [sic] in case of accidental contact with live wires;
h. Required employees to work on energized lines when the power to these lines could have easily been turned off. Only one residence would have been without power and for only around 30 minutes;
i. Failed to properly maintain the one shot system so that power was immediately terminated in case of an accident;
j. Allowed other work to proceed on same structure above Plaintiff while Plaintiff worked on live line; and
k. In other ways to be discovered and shown at trial.
17. As a direct and proximate result of Defendant's conduct and actions as described above, Plaintiff sustained serious and painful bodily injuries . . . .
Unlike in Woodson, Pastva, Arroyo, and Regan, the complaint does not allege facts showing that Defendant had actual knowledge of the dangerous working conditions, such as a previous OSHA citation for the same or similar conduct, a specific warning that the conditions were dangerous, or Defendant's knowledge that the conditions had previously caused injury or death. Furthermore, the complaint does not allege that Defendant required Plaintiff to work in the dangerous conditions after having actual knowledge of them. While the complaint alleges that Defendant did not adequately maintain its equipment, failed to implement adequate safety measures in violation of OSHA regulations, and could have done more to protect its employees, "even a knowing failure to provide adequate safety equipment in violation of OSHA regulations [does] not give rise to liability under . . . Woodson[.]" Edwards, __ N.C. App. at __, 668 S.E.2d at 118 (quotation marks and citation omitted). We hold that Plaintiff has failed to allege facts which, if proven, would show that Defendant "intentionally engage[d] in misconduct knowing it [was] substantially certain to cause serious injury or death to employees[.]" Woodson, 329 N.C. at 340, 407 S.E.2d at 228.
As Plaintiff failed to adequately plead a Woodson claim, the trial court did not err in granting Defendant's motion to dismiss pursuant to Rule 12(b)(6). Accordingly, the trial court's order is
AFFIRMED.
Chief Judge MARTIN and Judge HUNTER, JR. concur.
Report per Rule 30(e).