IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-740

Filed 18 June 2025

Union County, No. 22CVS000598-890

KAREN TYSON, as Administrator of the Estate of FRANKLIN SCOTT TYSON, Plaintiff,

v.

ELG UTICA ALLOYS, INC., ELG UTICA ALLOYS HOLDING CORP., ELG UTICA ALLOYS (HARTFORD), INC., and ELG UTICA ALLOYS (MONROE) LLC, d/b/a ABS ALLOYS & METALS USA, LLC, Defendants.

Appeal by defendants from order entered 23 April 2024 by Judge Jonathan Perry in Union County Superior Court. Heard in the Court of Appeals 18 March 2025.

> *Comerford Chilson & Moser, LLP, by John A. Chilson, The Law Offices of William K. Goldfarb, by William K. Goldfarb, and Love & Hutaff, PLLC, by Richard R. Hutaff, for plaintiff-appellee.*
>
> *Raynor Law Firm, PLLC, by Kenneth R. Raynor, for defendants-appellants.*

ZACHARY, Judge.

This case concerns the *Woodson* exception to the exclusivity provision of the North Carolina Workers' Compensation Act ("the Act"). *See* N.C. Gen. Stat. § 97-10.1 (2023); *Woodson v. Rowland*, 329 N.C. 330, 340–41, 407 S.E.2d 222, 228 (1991). As discussed in greater detail herein, a *Woodson* claim presents "an exception to the Act's exclusivity provision . . . for civil actions brought as a result of conduct that is tantamount to an intentional tort." *Hidalgo v. Erosion Control Servs., Inc.*, 272 N.C.

App. 468, 471, 847 S.E.2d 53, 56 (2020) (cleaned up).

Plaintiff Karen Tyson, as the administratrix of the estate of her deceased brother, Franklin Scott Tyson ("Decedent"), asserted a *Woodson* claim against Defendants ELG Utica Alloys, Inc., ELG Utica Alloys Holding Corp., ELG Utica Alloys (Hartford), Inc., and ELG Utica Alloys (Monroe) LLC, d/b/a ABS Alloys & Metals USA, LLC.[1] Defendants appeal from the trial court's order denying their motion for summary judgment. We conclude that Plaintiff's forecast of evidence failed to establish a *Woodson* claim, and therefore, the trial court erred in denying Defendants' motion for summary judgment. Accordingly, we reverse and remand.

## I. Background

On 7 April 2020, Decedent was killed by an explosive fire while operating the zirconium crusher at Defendants' metal processing plant in Monroe, North Carolina. Defendants' Monroe facility recycled metal used in the aerospace industry, including zirconium. Defendants processed zirconium turnings, which are spiral shavings of the metal, using a crusher.

Prior to the fatal explosion, there had been a few inconsequential, slow-burning zirconium fires at the Monroe facility—including at least one that could not be put out by Class D fire extinguishers, which was resolved when Defendants' employees

---

[1] In Plaintiff's amended complaint, she refers to Defendants collectively as "members of a conglomerate," including a parent company and subsidiaries. In that Defendants do not object to their treatment as a collective party, for the purposes of this appeal and for ease of reading, we refer to them collectively as "Defendants."

"pulled the materials involved in [the] fire outside the building to let it burn out."

Defendants had also previously received citations from federal and state authorities for various safety violations. Significantly, none of these citations specifically related to zirconium. The federal Occupational Safety and Health Administration ("OSHA") cited Defendants' facility in Hartford, Connecticut, regarding its handling of combustible titanium dust. The Occupational Safety and Health Division of the North Carolina Department of Labor ("NC OSHA") cited Defendants for multiple violations at the Monroe facility, including several related to the safe handling of hazardous materials. Following the fatal incident, NC OSHA issued several additional citations related to Defendants' handling of zirconium and the crusher.

Acting as the administratrix of Decedent's estate, on 4 March 2022, Plaintiff filed a complaint against Defendants in Union County Superior Court. Defendants filed a motion to dismiss and answer on 9 May 2022. On 7 September 2022, Plaintiff filed an amended complaint, asserting a *Woodson* claim as well as "all other available claims not barred/excluded under [the Act]." Defendants filed their motion to dismiss and answer on 31 October 2022.

After extensive discovery, Defendants filed a motion for summary judgment on 16 February 2024. On 27 February 2024, Plaintiff likewise filed a motion for summary judgment. Both motions came on for hearing in Union County Superior Court on 8 April 2024.

On 23 April 2024, the trial court entered a pair of orders denying the parties' respective motions for summary judgment. Defendants timely filed notice of appeal from the order denying their motion for summary judgment.

## II.    Appellate Jurisdiction

Defendants acknowledge the interlocutory nature of the order from which they appeal but nonetheless assert that this Court may properly exercise jurisdiction because the trial court's order affects a substantial right.

"Generally, a party has no right of appeal from an interlocutory order." *Edwards v. GE Lighting Sys., Inc.*, 193 N.C. App. 578, 581, 668 S.E.2d 114, 116 (2008). "An interlocutory order is one made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Hanesbrands Inc. v. Fowler*, 369 N.C. 216, 218, 794 S.E.2d 497, 499 (2016) (citation omitted).

"An exception exists when the order will deprive the party of a substantial right absent an immediate appeal." *Edwards*, 193 N.C. App. at 581, 668 S.E.2d at 116; *see* N.C. Gen. Stat. §§ 1-277(a), 7A-27(b)(3)(a). "As a general rule, a moving party may not appeal the denial of a motion for summary judgment because ordinarily such an order does not affect a substantial right." *Bockweg v. Anderson*, 333 N.C. 486, 490, 428 S.E.2d 157, 160 (1993) (cleaned up).

However, as Defendants note, it is well established that the denial of a motion for summary judgment based upon the Act's exclusivity provision affects a

substantial right. *See, e.g.*, *Hidalgo*, 272 N.C. App. at 470–71, 847 S.E.2d at 55 (exercising jurisdiction where the plaintiff appealed denial of a summary judgment motion pursuant to the exclusivity provision of the Act); *see also Edwards*, 193 N.C. App. at 581, 668 S.E.2d at 116. In that Defendants have sufficiently demonstrated that the trial court's interlocutory order denying their motion for summary judgment affects a substantial right, this appeal is properly before us.

### III.    Discussion

On appeal, Defendants argue that the trial court erred by denying their motion for summary judgment because "Plaintiff's evidence in this case fails to meet the conduct tantamount to an intentional tort required by *Woodson*." (Italics added). We agree.

### A.  Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *Hidalgo*, 272 N.C. App. at 471, 847 S.E.2d at 55 (citation omitted). When conducting de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* (citation omitted).

"There is no genuine issue of material fact where a party demonstrates that the claimant cannot prove the existence of an essential element of his claim." *Edwards*, 193 N.C. App. at 582, 668 S.E.2d at 117 (cleaned up). "All inferences of fact

from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Id.* (citation omitted).

## B. The *Woodson* Exception

The Act is intended "to ensure that injured employees receive sure and certain recovery for their work-related injuries without having to prove negligence on the part of the employer or defend against charges of contributory negligence." *Whitaker v. Town of Scotland Neck*, 357 N.C. 552, 556, 597 S.E.2d 665, 667 (2003), *reh'g denied*, 358 N.C. 159, 593 S.E.2d 591 (2004). "However, to balance competing interests between employees and employers, the Act includes an exclusivity provision, which 'limits the amount of recovery available for work-related injuries and removes the employee's right to pursue potentially larger damage awards in civil actions.'" *Hidalgo*, 272 N.C. App. at 471, 847 S.E.2d at 56 (quoting *Woodson*, 329 N.C. at 338, 407 S.E.2d at 227).

In *Woodson*, our Supreme Court recognized a limited exception to the Act's exclusivity provision:

> [W]hen an employer intentionally engages in misconduct knowing it is substantially certain to cause serious injury or death to employees and an employee is injured or killed by that misconduct, that employee, or the personal representative of the estate in case of death, may pursue a civil action against the employer. Such misconduct is tantamount to an intentional tort, and civil actions based thereon are not barred by the exclusivity provisions of the Act.

329 N.C. at 340–41, 407 S.E.2d at 228.

*Woodson* set forth "an exacting standard that plaintiffs must meet in order to escape the exclusivity provision" of the Act. *Hidalgo*, 272 N.C. App. at 471, 847 S.E.2d at 56. Since *Woodson*, our Supreme Court has clarified that plaintiffs must produce "uncontroverted evidence of the employer's intentional misconduct . . . where such misconduct is substantially certain to lead to the employee's serious injury or death." *Whitaker*, 357 N.C. at 557, 597 S.E.2d at 668. Thus, "[t]he *Woodson* exception represents a narrow holding in a fact-specific case, and its guidelines stand by themselves. This exception applies only in the most egregious cases of employer misconduct." *Id.*

## C. Analysis

On appeal, Defendants argue that the trial court erred by denying their motion for summary judgment because Plaintiff failed to meet the exacting standard required by *Woodson*. Specifically, they contend that Plaintiff failed "to show that there was evidence that . . . [Defendants] intended that [Decedent] would be injured from working on the crusher to process zirconium or that they were manifestly indifferent to the consequences of his doing so as required by the *Woodson* exception."

This case illustrates the high bar established by our Supreme Court in *Woodson* and reinforced by *Whitaker*. In fact, at the hearing below, Defendants noted that Plaintiff's interrogatory responses "summarize[d] a case for negligence, maybe willful and wanton negligence" against Defendants, but maintained that Plaintiff had not shown that any "misconduct [wa]s tantamount to an intentional tort" as required

by *Woodson* and its progeny. *Woodson*, 329 N.C. at 341, 407 S.E.2d at 228; *see also, e.g.*, *Pendergrass v. Card Care, Inc.*, 333 N.C. 233, 239, 424 S.E.2d 391, 395 (1993) (recognizing that a *Woodson* claim requires "a higher degree of negligence than willful, wanton and reckless negligence").

Defendants rely on a series of cases from our appellate courts rejecting *Woodson* claims in which there was a "lack of evidence of the defendant[-]employer's recognition of the immediacy of the hazard the injured employee [wa]s faced with and thus there [wa]s no evidence that the employer intended the employee to be injured or that they were manifestly indifferent to the consequence." For example, in *Edwards*, this Court reversed the denial of a defendant-employer's motion for summary judgment—notwithstanding the plaintiff's presentation of "evidence relating to the results of investigations following the [fatal gas leak], including expert testimony regarding the likelihood of an accident"—where "there [wa]s no evidence that [the employer] knew, prior to [the] decedent's death, that a carbon monoxide leak was substantially certain to occur." 193 N.C. App. at 584, 668 S.E.2d at 118. Indeed, "although the evidence tended to show that [the employer] did not adequately maintain its equipment," this Court nonetheless explained that "even a knowing failure to provide adequate safety equipment in violation of [NC] OSHA regulations does not give rise to liability under *Woodson*." *Id.* (cleaned up).

As in *Edwards*, here, Plaintiff relies in part upon NC OSHA's subsequent investigation of the fatal fire and resulting citations for "Serious" and "Repeat

Serious" violations arising from Defendants' alleged failure "to protect [Decedent] from recognized hazards likely to cause death or serious physical harm." However, in *Edwards*, although the "plaintiff presented evidence relating to the results of investigations following the accident, including expert testimony regarding the likelihood of an accident, there [wa]s no evidence that [the employer] knew, *prior* to [the] decedent's death, that [the accident] was *substantially certain* to occur." *Id.* (emphasis added). "As discussed in *Woodson,* simply having knowledge of some possibility, or even probability, of injury or death is not the same as knowledge of a *substantial certainty* of injury or death." *Whitaker*, 357 N.C. at 558, 597 S.E.2d at 668–69 (emphasis added).

In addition, Plaintiff maintains that Defendants were "aware of, but repeatedly ignored, safety warnings associated with the grinding of zirconium." But as Defendants persuasively observe, the evidence shows that their employees "thought that any fires resulting from the processing of zirconium would be slow burning and easily capable of extinguishment." Plaintiff points to prior zirconium fires at the Monroe facility, one of which Defendants admitted could not be extinguished with a Class D fire extinguisher; however, even that fire was not remotely comparable to an explosion. Defendants' employees simply "pulled the materials involved in [the] fire outside the building to let it burn out." The record evidence suggests that, while zirconium fires were not unprecedented, Defendants had no "knowledge of a substantial certainty" of a sudden conflagration with the

sustained force and intensity of the one that tragically killed Decedent in this case. *Id.* at 558, 597 S.E.2d at 669.

Plaintiff also repeatedly asserts that Defendants "purposefully placed [Decedent] in an unprotected location, without safety gear, directly above known sparks and fires emitting from an explosive metal being ground within a crusher." However, our Supreme Court in *Pendergrass* concluded that knowledge that "certain dangerous parts of [a] machine were unguarded when [the employer] instructed [the employee] to work at the machine" did not support "an inference that [the employer] intended that [the employee] be injured or that they were manifestly indifferent to the consequences of his doing so." 333 N.C. at 238, 424 S.E.2d at 394.

Defendants candidly acknowledge that, when viewed in the light most favorable to Plaintiff, there was evidence presented "from which a juror could find that the management of [Defendants] should have or could have recognized that their understanding of the risk of processing zirconium was flawed and that they should have taken some additional actions, much like those identified by . . . Plaintiff's experts." Yet as Defendants correctly note, although this evidence might support a claim for negligence, it does not amount to misconduct "tantamount to an intentional tort," as is required for a successful *Woodson* claim. *Woodson*, 329 N.C. at 341, 407 S.E.2d at 228.

Ultimately, our careful review of the record in the light most favorable to Plaintiff reveals that Defendants have "demonstrate[d] that [Plaintiff] cannot prove

the existence of an essential element" of the asserted *Woodson* claim. *Edwards*, 193 N.C. App. at 582, 668 S.E.2d at 117 (citation omitted). "Although we are sensitive to the facts of this case, we emphasize as did our Supreme Court in *Whitaker*, there must be 'uncontroverted evidence of the employer's intentional misconduct . . . where such misconduct is substantially certain to lead to the employee's serious injury or death.' " *Hidalgo*, 272 N.C. App. at 474, 847 S.E.2d at 57 (quoting *Whitaker*, 357 N.C. at 557, 597 S.E.2d at 668).

We conclude that "Plaintiff has not forecast evidence of intentional misconduct by Defendants substantially certain to lead to Decedent's death so as to create a genuine issue of material fact sufficient to survive summary judgment on Plaintiff's claims arising under *Woodson*." *Id.* Accordingly, the trial court erred by denying Defendants' motion for summary judgment.

## IV.    Conclusion

For the foregoing reasons, the trial court's order denying Defendants' motion for summary judgment is reversed, and this matter is remanded for entry of an order granting Defendants' motion for summary judgment. *See id.* at 474, 847 S.E.2d at 58.

REVERSED AND REMANDED.

Judges STROUD and COLLINS concur.